[No. 36428. Department One. March 7, 1963.]

John H. Lee *et al., Respondents,* v. Peter Barnes *et al., Appellants.**

*Reported in 379 P. (2d) 362.

*Colvin & Williams (John J. Keough,* of counsel), for appellants.

*Washington & Wickwire,* for respondents.

HUNTER, J.—This appeal has been brought challenging the criterion applied by the trial court in determining the upset price of certain mortgaged theater equipment. The hearing on this question was conducted in compliance with a remand by this court in *Lee v. Barnes,* 58 Wn. (2d) 265, 362 P. (2d) 237 (1961).

Peter Barnes and the corporations herein involved (appellants) purchased certain theater equipment and leased several motion picture theaters in the vicinity of central Washington which were owned by John Lee (respondent). Appellants executed chattel mortgages on the theater equipment to secure payment of the balance of the purchase price and to insure performance of the leases. Because the theater business became unprofitable, appellants defaulted in their agreements and respondent was forced to foreclose the chattel mortgages. Appellants petitioned the trial court to declare an upset price prior to the foreclosure sale, the

motion for which was denied. The foreclosure sale was held December 1, 1959, and an appeal resulted. In that appeal, *Lee v. Barnes, supra,* this court remanded the cause to the trial court, instructing it to conduct a hearing and determine the upset price in conformity with RCW 61.12-.060, which states:

"In rendering judgment of foreclosure, the court shall order the mortgaged premises, or so much thereof as may be necessary, to be sold to satisfy the mortgage and costs of the action. . . . The court, in ordering the sale, may in its discretion, take judicial notice of economic conditions, and after a proper hearing, fix a minimum or upset price to which the mortgaged premises must be bid or sold before confirmation of the sale.

"The court may, upon application for the confirmation of a sale, if it has not theretofore fixed an upset price, conduct a hearing, establish the value of the property, and, as a condition to confirmation, require that the fair value of the property be credited upon the foreclosure judgment. . . ."

At this hearing, the trial court ruled that it would determine the value of the equipment as of December 1, 1959 and would not admit any evidence as to the value of the equipment after that date nor any evidence as to the value of the equipment while in operation. In addition the trial court refused to accept the original bill of sale as indicative of the value of the equipment for the reason that the figures therein included the value of the business. At the hearing's conclusion, the trial court determined the upset price to be $89,225, a sum exceeding that which respondent bid at the sale. The court stated that it derived this figure by determining the fair value of the property in light of the economic conditions as of the date of sale.

By their assignments of error, appellants contend that the trial court, in fixing the upset price, should have considered the original sales price, the value of the theater business, and the future economy of the community; and that the trial court, in considering the future economy of the community, should have accepted evidence of improved

economic conditions subsequent to the date of the fore-closure sale.

■ The appellants suggest three alternative methods to determine the upset price which they feel use the criteria consistent with the purposes of RCW 61.12.060. The first suggested method is to take the original value, as indicated by the bill of sale, less depreciation. There is no merit to this suggested method under the facts of the instant case since the record supports the trial court's finding that the consideration recited in the bill of sale included the value of the business.

The second suggested method is to follow the formula used by the parties at the original sale which they allege in the instant case was to base the value of the equipment upon the gross transaction of the theater business sold to the appellants. The trial court correctly refused to follow this formula as there is no reasonable relation between the gross transaction of a theater's business and the fair value of its equipment.

The third suggested method for determining the upset price is to consider the improved economic conditions subsequent to the date of sale. Appellants rely on the reasoning of *Suring State Bank v. Giese,* 210 Wis. 489, 246 N. W. 556, 85 A.L.R. 1477 (1933), which they contend controls the instant case since it appears that RCW 61.12.060 is an almost verbatim adoption of a portion of that opinion. We agree that this case is controlling. Consequently, we will consider the merits of appellants' third suggested method after our discussion of the *Giese* case.

The question before the court in the *Giese* case, which was decided in 1933—an era of depressed economic conditions in this country—was whether it was within the power of a court of equity, without the aid of statute, to fix an upset price at the time of confirmation of a foreclosure sale. The court reasoned:

"The court, in ordering a sale or a resale, may, in its discretion, take notice of the present emergency and, after a proper hearing, fix a minimum or upset price at which the premises must be bid in if the sale is to be confirmed.

This is a power that courts of equity ordinarily exercise in cases of foreclosure of corporate property which is of such size and character as to preclude the establishment of a fair price by competitive or cash bidding. *Northern Pac. R. Co. v. Boyd,* 228 U. S. 482, 33 Sup. Ct. 554. We see no reason why the same power should not be exercised in cases where economic conditions are such as to preclude the element of competitive bidding, and to make ineffective the ordinary and usual manner of fixing the market value of the property."

Unlike the Wisconsin court, we are not here concerned with the question of authority since our legislature enacted RCW 61.12.060 in 1935 granting the court power to fix an upset price. However, since the language of RCW 61.12.060 was adopted from that opinion, the facts which that court felt a court of equity must consider in determining an upset price are persuasive in the instant case. Since our statute permits the fixing of an upset price for both real and personal property, the reasoning of the Wisconsin court as to real property is equally appropriate to personal property.

Speaking of the considerations which a trial court might properly contemplate in fixing an upset price, the court in the *Giese* case said:

" . . . In normal times competitive bidding is the circumstance that furnishes reasonable protection to the mortgagor, and avoids the sacrifice of the property at a grossly inadequate sale price. In the present situation the device of a judicial sale largely fails of its intended purpose because of the lack of competitive bidding, . . . This is not a situation in which ordinary logic with respect to values has much vitality. In theory, a thing that cannot be sold has no value, and so with a parcel of real estate that is offered for sale at foreclosure. It may be argued that it is worth what purchasers will pay for it, and no more, and that if the only price offered constitutes but a negligible part of its theretofore assumed value, it nevertheless represents the value of the real estate at that time. Such a conclusion is shocking to the conscience of the court, . . . Certainly the land has value so long as it or the buildings upon it may be used, and certainly in the case of farm lands, which constitute the homes of farmers, *the premises have value in the sense of usefulness,* however difficult it may

be to translate this value into terms of dollars. Furthermore, this real estate, which is suffering from the consequences of a period of readjustment through which we are passing, *has potential or future value which may legitimately be taken into account.* Its value in terms of dollars has been affected by a general condition. No one piece of land has depreciated in value,—it has all depreciated. It has all suffered from the lack of demand on the part of buyers. . . . What is said here is said in the light of the present emergency, and because of the present inadequacy of a judicial sale to establish a fair value for the security." (Italics ours.)

■ In effect, the Wisconsin court found that the purpose of fixing an upset price is to assure the mortgagor of a fair price, as would be attained were there willing and competitive bidders available at the time of sale. As stated in *Farmers & Mechanics Sav. Bank of the City of Lockport v. Eagle Bldg. Co.,* 151 Misc. 249, 271 N. Y. S. 306 (1934), the opinion of which refers to the *Giese* case:

" . . . The reason advanced for fixing an upset price in case of corporate reorganizations is that the magnitude of the interests involved and the specialized character of the property would make it impossible to secure bidders who would offer a fair price except through some combination of capital intending to effect a reorganization, and that such a combination should not be permitted to take advantage of its position and buy without competition to the prejudice of other interests.

"The same reasoning applies with equal force to a situation such as that created by present market conditions in which there is no prospect of bidders ready and willing to offer an adequate price, other than the owner of the mortgage debt, who should not be permitted to take an unconscionable advantage of his position. . . ."

■ We therefore conclude and hold that, in fixing the upset price, the trial court should assume the position of a competitive bidder determining a fair bid at the time of sale under normal conditions. As such it is proper for the court to consider the usefulness of the property under normal conditions, its potential or future value, the type of property involved, the potential future economy, and any

other factor which such a bidder might consider in determining a fair bid for the mortgaged property. Any evidence—opinion or fact—which might influence the amount of such a bid is proper.

In view of our analysis of the *Giese* case and of the foregoing conclusions drawn therefrom, we find appellants' third suggested method, requiring the trial court to consider the evidence of improved conditions subsequent to the sale, without merit. This method is inconsistent with the theory of the *Giese* case that the trial court, in fixing the upset price, should consider those factors which, under normal conditions, a competitive bidder *at the time of sale* would consider in arriving at a fair bid. Obviously, such a bidder could not have considered facts regarding improved conditions which had not yet come into being because he would have had no knowledge of them. However, we find that the trial court erred in failing to consider the potential future economy of the area in fixing the upset price. As stated in this opinion, this factor should have been considered since it would have been known and considered by a competitive bidder as an element in arriving at a fair bid price.

It is therefore proper that the case be remanded in order to insure justice for all parties and to permit the trial court the advantage of reconsidering the upset price in light of the guides which we have stated herein.

The judgment is reversed and the cause is remanded, with instructions to the trial court to reconsider the upset price and, within the limits of the guides herein, to permit the introduction of further evidence from either party which might aid in determining that price. Neither party shall recover costs of this appeal.

OTT, C. J., HILL, ROSELLINI, and HALE, JJ., concur.