[No. 5722. Decided December 21, 1905.]

ROBERT NISBET, *Plaintiff*, v. GREAT NORTHERN CLAY
COMPANY, *Defendant*, A. L. BROWN, *as Receiver
etc., et al., Respondents*, OHIO CERAMIC
ENGINEERING COMPANY, *Appellant*.[1]

RECEIVERS — SALES — CONFIRMATION. The confirmation of a re-
ceiver's sale, consented to by all the creditors excepting one, should
not be set aside at the instance of a single creditor, where it is not
shown that any higher sum could be realized upon a resale, and the
highest sum possible seems to have been obtained.

SAME—RECEIVER'S CERTIFICATES—PRIORITY. A creditor is in no
position to contest the priority of receiver's certificates which re-
cited that they were a first lien on the assets, where his rights were
based upon a similar receiver's certificate reciting that the others
were prior liens; nor could he contest the priority of another earlier
certificate which by inadvertence was not mentioned in his certifi-
cate.

SAME—CLAIMS FOR LABOR—PRIORITY. A receiver's certificate is
junior to the claims of laborers for services performed for the re-
ceiver, under Laws 1897, ch. 43; especially where it states on its
face that it is subject to the expenses of the trust.

RECEIVERS — SALES — CERTIFICATES AS PART OF PURCHASE PRICE.
A receiver's sale cannot be attacked on the ground that the pur-
chaser had an understanding with the court that certain receiver's
certificates should be received as part of the purchase price where
such certificates were entitled to priority and must first be paid out
of the proceeds of the sale.

RECEIVERS—SALES—NOTICE. It is not necessary to give creditors
notice of a receiver's sale, where the sale is made in good faith and
is for the best interests of the trust.

RECEIVER—ALLOWANCE FOR FEES. An allowance of $2,000 for a
receiver and his attorney out of an insolvent estate from which
$11,200 was realized held not excessive on the showing made.

Appeal from an order of the superior court for King
county, Bell, J., entered January 7, 1905, after a hearing on
the merits, denying a petition to vacate a receiver's sale and
order of confirmation. Affirmed.

[1] Reported in 83 Pac. 15.

*Allen, Allen & Stratton,* for appellant.

*Kerr & McCord, James Kiefer,* and *M'Cafferty & Kane,* for respondents.

HADLEY, J.—This appeal is from an order denying a petition to vacate an order confirming a receiver's sale. The original action was brought by Robert Nisbet against the Great Northern Clay Company, a corporation. Insolvency of the corporation was alleged and admitted, and a receiver was appointed. The receiver, by authority of the court, conducted the business of the corporation for some months, with unprofitable results. The first receiver appointed conducted the business for a few weeks, when he was succeeded by J. E. Ballou, who managed the receivership and affairs of the corporation for some months, when he left the state leaving liabilities of the receivership aggregating a large sum. Ballou was then removed as receiver and A. L. Brown was appointed as his successor. The disastrous results appear to have been due to the management of receiver Ballou.

During such management, the property deteriorated in value and was in a dilapidated condition when Ballou left it. The expenditure of some thousands of dollars was necessary by way of repairing and improving the brick plant before it could be successfully operated. The receiver was unable to do this inasmuch as the trust was insolvent. The business could no longer be conducted through the receivership. The property was constantly depreciating in value, and with this condition of affairs confronting him the present receiver Brown entered upon his duties. It was the desire of the court and the receiver to prevent further depreciation in value of the assets and thenceforth the efforts of both were directed to the end that the assets of the trust might be converted into cash for the benefit of creditors as speedily and advantageously as possible.

For a better understanding of the questions involved on this appeal, a further definite and somewhat extended state-

ment as to certain facts becomes necessary. On October 1, 1903, a receiver's certificate was issued by receiver Ballou to the First National Bank of Seattle, for $3,000, bearing interest at eight per cent per annum, and on the 2d day of November of the same year, another certificate was issued by the same receiver to the same bank for $2,000, bearing the same rate of interest. Upon the face of the first certificate, it was declared to be a first lien upon all the assets and property of the corporation. The second one was declared to be a lien upon all the assets prior to all other liens and claims except that of the said $3,000 certificate. The said certificates were issued by the authority of the court, and were approved by it. The amount of money represented by the two certificates was loaned by said bank to the receiver.

On the 10th day of November, after the issuance of the last certificate above mentioned, another certificate was likewise issued by the receiver to the Ohio Ceramic Engineering company of Cleveland, Ohio, for $1,500, bearing interest at six per cent per annum. This certificate stated upon its face that it was a prior lien upon all the assets of the corporation, except the $3,000 certificate above mentioned and the costs and expenses of the trust. The certificate was issued in payment for one hundred dryer cars, purchased by receiver Ballou from said payee named in the certificate. Receiver Ballou also employed certain laborers while operating the plant, and promised to pay them sums aggregating $2,077.70. The claims of these laborers were assigned to said First National Bank of Seattle. The total amount thus held by said bank against the trust including the two certificates mentioned and the assigned labor claims, was, with interest, $7,248.86, on the day of the confirmation of the sale which it is here sought to set aside.

On the 9th day of February, 1904, Robert Nisbet, the plaintiff in the action wherein the receiver was appointed, filed his petition with the court, asking an order for the sale of all the property of the Great Northern Clay Com-

pany, then in the hands of the receiver. Such an order was
made authorizing the receiver to sell the property at public
auction to the highest bidder for a minimum price of $20,000,
and requiring not less than ten days' notice of the sale. No-
tice as prescribed in the order of sale was given, and the
time fixed for the sale was March 5, 1904, at which time
the receiver offered the property for sale but received no
bids, and thereupon he continued the sale until March 10.
Immediately after the said adjournment of sale, the receiver
and his attorneys, together with the attorneys of substantially
all the parties who had appeared in the action, went before
the superior court then in session, and in open court reported
the failure to sell. Discussion was had between court and
counsel with reference to the emergency for immediate sale.
The court thereupon instructed the receiver to re-offer the
property for sale as before for the sum of $20,000, and if
that sum could not be obtained, to offer the property regard-
less of price, subject to the confirmation and approval of the
court. Thereupon Ernest Carstens offered in open court to
bid for the property provided the aforesaid claims of the
First National Bank of Seattle should be received as a part
of the purchase price. This was made in the presence of
the court and counsel at the time they were together as afore-
said. The court thereupon stated in the hearing of all pres-
ent that, if said Carstens would bid at the adjourned sale a
sum which should be accepted and approved by the court,
the amount of the claims of said bank would be accepted as
a part of the purchase price, if said Carstens could acquire
the claims. It was in this manner and through this under-
standing with the court and counsel for interested parties
that Mr. Carstens became involved in the matters which led
to the controversy brought here by this appeal.

Accordingly, on March 10, the property was again offered
for sale by the receiver, and Mr. Carstens bid therefor the
sum of $11,200, conditioned upon the use of the obligations
of the receiver to the First National Bank of Seattle as a

part of the purchase price. The receiver reported the offer
to the court and notice of hearing thereon was given to all
parties to the action and to all creditors who had filed appear-
ances in the action. At the hearing the advisability of ac-
cepting the offer was fully discussed and considered in the
presence of counsel, who represented substantially all of the
interested parties, and the court, believing that the offer
was the best that could be obtained, directed the receiver to
accept it. Thereupon Mr. Carstens paid the receiver
$11,200, of which sum $7,248.86 consisted of receiver's cer-
tificates and assigned labor claims held by the bank as afore-
said, and the balance, $3,951.14, was paid in cash. The sale
was confirmed by the court and by its order a conveyance
was executed by the receiver, transferring all the property
to Mr. Carstens.

Therafter the Ohio Ceramic Engineering Company filed
a petition asking that the sale, the order approving it, and
the conveyance be set aside. The petition recites the facts
heretofore stated with reference to the issuance of the $1,500
receiver's certificate to the petitioner, and alleges that the peti-
tioner had no notice of the sale or of any of the proceedings
had in connection therewith. It is also alleged that, as a
consequence of said proceedings, all the purchase price of
the property was appropriated by the receiver to the pay-
ment of claims other than that of the petitioner, and which
were in fact subordinate and inferior in right and equity to
the claim of the petitioner. It is also alleged that allow-
ances were made to the receiver in the sum of $1,200 for his
own services, and $800 for his attorney's services, which sums
are charged to have been excessive; and it is asked that the
order of allowance be set aside. The petition was denied
and from the order of denial the petitioner is prosecuting
this appeal.

From the record we are satisfied that all parties thereto
were advised of the proceedings concerning the sale of the
property, and assented to the confirmation thereof, except

the appellant. At least, no one except appellant has raised any objection to the proceedings. We are furthermore satisfied that the highest possible sum was obtained for the property. Appellant has in no manner pointed out how a greater sum might have been realized, if it had been present and had actually participated in the proceedings. Without discussing the question of its right to notice of the proceedings, and assuming that appellant is in position to contest the regularity thereof, it is nevertheless true that, with its opportunity at the hearing of its petition, it has not shown that the trust had been in any sense the loser by the sale and its confirmation. We therefore think the court was fully justified in entering the judgment which was rendered upon the hearing of appellant's petition, which in terms reaffirms and reapproves the sale. This was an order entered after a full hearing from appellant, and it seems to us that appellant is now concluded thereby so far as any question of notice is concerned. It has had its day in court and an opportunity to be heard upon the questions it is urging, and unless some substantial right has been violated, the order of confirmation should stand.

The next question to be considered is that of the consideration for the sale which was accepted by the receiver and approved by the court. Appellant is not in position to contest the validity of the receiver's certificates as constituting prior liens upon the property of the trust, for the reason that the relief it now seeks is based upon such a certificate. Its certificate states upon its face that it is junior to one for $3,000 held by the bank aforesaid, and also that it is junior to the expenses of the trust. The fact was, however, that eight days before its certificate was issued, another one for $2,000 was issued to the bank, which fact was doubtless overlooked by inadvertence when appellant's certificate was drawn, and was not mentioned therein. The $2,000 certificate was, however, first in point of time, was for an actual cash loan, was declared to be a prior lien by order of the court, and appellant's

certificate must therefore be held to be subject and junior to it.

Its certificate was also junior to the laborers' claims, for two reasons: The laborers were entitled to a prior lien upon the property of the corporation under chapter 43, session laws of 1897, and the certificate itself says it is subject to the expenses of the trust. The labor was performed in behalf of the trust at the instance of the receiver, and by authority of the court. It follows that all the claims allowed by the court as part of the purchase price of the assets were liens upon the assets and prior to the appellant's claim. Being prior liens upon the assets, the holder of the claims would, so far as appellant was concerned, have been entitled to the first money from the proceeds of the sale if the sale had been entirely for cash. By the application of the amount of the claims to the purchase price, the result was the same as though the full price had been directly paid in cash. We think respondent Carstens as the holder of those claims would have been entitled to turn them in as part of the purchase price even in the absence of the previous understanding had with the court. In *Mercantile Trust Co. v. Kanawha etc. R. Co.,* 58 Fed. 6, the purchasers were permitted to deposit bonds in payment of the purchase price, after paying into court sufficient cash to extinguish the costs and liens prior to the bonds. Of this the court said:

"This was precisely the same as if the purchasers had paid the whole price in money, and had then withdrawn, on distribution, their *pro rata* share of the proceeds. Their rights cannot be different because they did not go through this useless formality. The railroad property, to the extent that it was paid for by bonds, was, in the hands of the purchasing bondholders, proceeds of sale."

We therefore think the sale, its approval, and all the proceedings considered together, including the order of re-confirmation aforesaid, were of sufficient regularity, and that appellant's rights were not prejudiced thereby. We know of

no statutory requirements regulating the sale of property by receivers in this state which make it necessary to give notice to all the creditors.   The sale is made under the direction of the court as a court of equity, and it should be presumed that the court and its officer will make an honest effort to realize the greatest sum possible for the assets of the trust. When, therefore, a purchaser has bought in good faith, unless it is subsequently made to appear that the best interests of the trust would be served by not making any sale at all, or that the consideration is inadequate, his rights become established and should not be disturbed.   Particularly should it be so when it appears that no higher sum could have been realized.   Under such circumstances we are unable to see that a creditor's rights are prejudiced by the mere fact that he did not have actual notice of the sale.   The record of this case shows that, if appellant had been present at the sale proceedings and at the time of the first confirmation, it would have been unable to effect a different result from that which was obtained.   Its claim would necessarily have been postponed as junior to those applied upon the purchase price, for the reason that the law under the facts fixed its status so.   Being subject to those claims, appellant's claim therefore becomes a first lien upon the remaining assets except expenses of the trust, for the reason that it is expressly made subject to such expenses.

Appellant's interest in the premises therefore seems to be confined to the right to share in the distribution of the balance with preference according to the terms of · its certificate.   The purchaser paid to the receiver $3,951.14 cash, which exceeds the amount required to pay appellant's claim by considerably more than $2,000.   Unless more than the excess is required to pay necessary expenses of the trust, appellant is still amply protected.   The petition shows that, by an order of the court, the receiver and his attorneys were allowed for services the aggregate sum of $2,000.   It is claimed that this was excessive and the petition asks that

the order of allowance be set aside.    After hearing testimony upon this subject, the court reaffirmed its former decision as to the value of the services.    From all that is shown in this record we shall not undertake to say that the finding was erroneous.    Other allowances said to have been made at different times during the administration of the trust are discussed in appellant's brief, but they are not mentioned in its petition, are not within the issues before us, and are not covered by the judgment from which the appeal is taken. They therefore involve questions that are not before us.

The judgment is affirmed.

MOUNT, C. J., RUDKIN, CROW, ROOT, and DUNBAR, JJ., concur.