[No. 1351-1.    Division One—Panel 2.    November 6, 1972.]

JOHN A. FERREE et al., *Appellants*, v. HAROLD J. FLEETHAM et al., *Respondents*.

*Thomas C. McCarthy,* for appellants.

*Ostrander, Van Eaton, Thomas & Ferrell* and *Ralph I. Thomas,* for respondents.

JAMES, J.—This case concerns the trial judge's exercise of judicial discretion in conducting a receiver's sale of real property. The transactions which prompted Ferree to bring this action were as follows: The parties had purchased a tract of real estate as equal tenants in common. Subsequent

to the purchase, and in a prior suit, Fleetham obtained a money judgment against Ferree in the sum of $31,266.45 for nonpayment of certain promissory notes. Thereafter Fleetham levied upon and purchased Ferree's interest in the partnership property at execution sale.

In this action Ferree claims that his interest in the property is that "of a joint adventurer with Fleetham" and that under the provisions of the uniform partnership act, RCW 25.04, this partnership interest was not subject to levy. On January 26, 1970, a stipulated judgment was entered herein nullifying the levy and sale of Ferree's interest in the property and declaring the parties to be owners of the property as joint adventurers. Pursuant to RCW 25.04.280,[1] a charge is established against Ferree's interest in favor of Fleetham for the amount of his prior judgment. The stipulated judgment further provides that in the event that Ferree's judgment debt is not discharged within 12 months, Fleetham may,

> upon five days written notice to the plaintiffs Ferree, apply to the Court for the appointment of a receiver, pursuant to RCW 25.04.280 to take possession of said real property and to either sell said real property or the plaintiff Ferree's interest therein. The decision as to sale

---

[1]"(1) On due application to a competent court by any judgment creditor of a partner, the court which entered the judgment, order, or decree, or any other court, may charge the interest of the debtor partner with payment of the unsatisfied amount of such judgment debt with interest thereon; and may then or later appoint a receiver of his share of the profits, and of any other money due or to fall due to him in respect of the partnership, and make all other orders, directions, accounts and inquiries which the debtor partner might have made, or which the circumstances of the case may require.

"(2) The interest charged may be redeemed at any time before foreclosure, or in case of a sale being directed by the court may be purchased without thereby causing a dissolution:

"(a) With separate property, by any one or more of the partners, or

"(b) With partnership property, by any one or more of the partners with the consent of all the partners whose interests are not so charged or sold.

"(3) Nothing in this chapter shall be held to deprive a partner of his right, if any, under the exemption laws, as regards his interest in the partnership."

of the real property or the interest of the plaintiff Ferree and the manner in which such sale shall be conducted shall be determined by the Court in its Order appointing such receiver.

Ferree did not pay within 12 months of the entry of the stipulated judgment. On March 30, 1971, on Fleetham's motion, an order was entered appointing a receiver and directing him to sell the property "for the best price (cash or terms) obtainable, within 90 days." The order provides that "[t]he receiver shall file his report of sale, and the sale shall be subject to the approval of the court." On June 30, 1971, the receiver sold the property to Fleetham. On July 2, 1971, the trial judge signed the "Findings and Order Confirming Sale of Real Property." The findings of fact relevant to the issue raised by this appeal are:

> Said property consists of 26.4 acres in Bellevue and Redmond and is zoned for single family residences. The receiver offered said property for sale for $5,000 per acre cash or $5,500 per acre on terms and presented such offer to more than twenty of the largest residential builders in King County. No offers to purchase were received except from defendant Harold J. Fleetham, whose offer in the sum of $87,055.15 was filed herein on June 8, 1971.

> On or about June 18, 1971, without a hearing, the court directed the receiver to hold a public sale in the courtroom at 9:00 A.M., June 30, 1971, and that the property be sold for a minimum price of $87,055.15 to the highest bidder. A notice of said sale was mailed to each party's attorney and on June 24, 1971, was published in the Bellevue American newspaper.

> On June 23, 1971, by stipulation of parties, the court heard and considered a motion by plaintiffs to quash the notice of sale and to hold a hearing to establish a minimum price, which motion was denied. Said motion was presented to the court in writing on June 23, 1971, but not filed with the clerk until June 28, 1971. Said motion was renewed at the time of sale on June 30, 1971, and denied.

> At the public sale advertised for and held on June 30, 1971, the parties hereto were in attendance by their counsel of record, and the receiver was also in attend-

ance. No additional bids, either written or oral, were received at said sale.

No higher nor better bid was received than the one received from the defendants Fleetham, and said real property should be sold to the defendants Fleetham in accordance with the bid submitted.

Findings Nos. 2, 3, 4, 5, and 6.

Ferree's appeal is from the order confirming the sale. His assignments of error all go to his claim that the trial judge should have held a hearing for the purpose of establishing a minimum price.

Ferree relies principally upon *Lee v. Barnes,* 58 Wn.2d 265, 362 P.2d 237 (1961), 61 Wn.2d 581, 379 P.2d 362 (1963). The *Lee* appeals concern the fixing of a minimum or upset price at a mortgage foreclosure sale as permitted by RCW 61.12.060. That statute, enacted in 1935, provides that in a mortgage foreclosure sale, "[t]he court, in ordering the sale, may *in its discretion,* take judicial notice of economic conditions, and after a proper hearing, fix a minimum or upset price to which the mortgaged premises must be bid or sold before confirmation of the sale." (Italics ours.)

Ferree recognizes that RCW 61.12.060 does not control sales by a receiver, but reasons that the same considerations which prompted our legislature to protect a defaulting mortgagor in the depression of the 1930's should constrain a contemporary court of equity to aid a judgment debtor distressed by King County's economic recession of the early 1970's.

■ We agree that without statutory authority, a court of equity has the power to fix an upset price in a receiver's sale. As is pointed out in the second *Lee* appeal, the language of RCW 61.12.060 was "adopted from" the opinion in *Suring State Bank v. Giese,* 210 Wis. 489, 493, 246 N.W. 556, 85 A.L.R. 1477 (1933), where it is held that "where economic conditions are such as to preclude the element of competitive bidding, and to make ineffective the ordinary and usual manner of fixing the market value of the prop-

erty . . ." a court of equity might fix an upset price at a foreclosure sale.

Ferree asserts that the trial court "certainly had judicial knowledge that there was practically no market for such property at the time the sale was ordered" and that [t]he economic situation in King County in 1971 bore a certain resemblance to that prevailing in Wisconsin in 1933."

According to 29 Am. Jur. 2d *Evidence* § 78 (1967), "[i]t is well settled that the courts take judicial notice of generally known financial and business conditions at given times . . ." including "the existence and effect of general domestic, economic, or financial depressions." But basic to this evidentiary rule is the caveat that "[i]n order that a fact may properly be the subject of judicial notice, it must be 'known'—that is, well established and authoritatively settled, without qualification or contention . . .", and "if there is any doubt whatever either as to the fact itself or as to its being a matter of common knowledge, evidence should be required." 29 Am. Jur. 2d *Evidence* § 24 (1967). Ferree's short record on appeal is silent as to what evidence, if any, he offered in support of his effort to persuade the trial judge that 1970 economic conditions in King County were akin to those of the 1930 depression era.

We are convinced that the trial judge could not properly have taken judicial notice of any such alleged similarity. The "certain resemblance" asserted by Ferree is not authoritatively settled. On the other hand, the trial judge *was* required to take judicial notice that the great depression of the 1930's spawned such economic regulators as bank deposit insurance, social security and unemployment compensation. 29 Am. Jur. 2d *Evidence* § 27 (1967). These and similar measures have insured that cyclical economic recessions do not degenerate into depressions which "make ineffective the ordinary and usual manner of fixing the market value of . . . property." *Suring State Bank v. Giese, supra* at 493.

Further, whether by statutory authority or in the exercise of inherent power, a trial judge must exercise *discre-*

*tion* in determining whether to hold a hearing to set a minimum price. Thus, Ferree's burden is to persuade us that the trial judge abused his discretion in declining to hold such a hearing.

■ The exercise of judicial discretion by a court of equity requires equal concern for the rights of both creditor and debtor. We believe that at the heart of the temperament which generated the ruling of *Suring State Bank v. Giese* and prompted the enactment of RCW 61.12.060, is the social philosophy that when economic conditions are severely imbalanced, basic concepts of justice require that equity intervene to aid the debtor at the expense of the creditor. The judicial objective is then to insure that the remedy afforded a judgment creditor by means of a judicial sale does not deprive a judgment debtor of the fair market price for his property.

■ However, a receiver's sale is presumptively fair to all interested parties because it is, in fact, a sale by the court. A receiver is the surrogate of the judge.

> [A receiver's] sale is made under the direction of the court as a court of equity, and it should be presumed that the court and its officer will make an honest effort to realize the greatest sum possible . . .

*Nisbet v. Great Northern Clay Co.*, 41 Wash. 107, 114, 83 P. 15 (1905).

As the findings of fact disclose, the property consisted of 26.4 acres zoned for single family residences. The trial judge directed his receiver to offer the property "to more than twenty of the largest residential builders in King County" and no offer was received other than Fleetham's of $87,055.15. Thereafter the trial judge directed his receiver to hold a public sale at which the minimum price acceptable would be $87,055.15. Both parties were given notice of the sale and notice was published in a newspaper of general circulation in the area where the property is situated.

■ The "ordinary and usual manner" in which a sale at fair market value is assured is by exposing the property to knowledgeable competitive bidders at public sale. This the

trial judge accomplished. He did not abuse his discretion in refusing to hold a hearing before fixing an upset price.

> Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *State ex rel. Clark v. Hogan,* 49 Wn.2d 457, 303 P.2d 290 (1956). Where the decision or order of the trial court is a matter of discretion, it will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds or for untenable reasons.

(Citations omitted.) *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Affirmed.

SWANSON and CALLOW, JJ., concur.

Petition for rehearing denied December 18, 1972.

Review denied by Supreme Court February 6, 1973.