[No. 52565–0.   En Banc.   November 13, 1986.]

AMERICAN FEDERAL SAVINGS AND LOAN ASSOCIATION OF TACOMA, *Appellant,* v. JOSEPH A. MCCAFFREY, ET AL, *Respondents.*

*Schweinler, Lowenberg & Lopez,* by *David E. Schweinler,* for appellant.

*Casey & Wiley,* by *Kevin P. Casey,* and *Hennings, Maltman, Weber & Reed,* by *Douglass A. North,* for respondents.

DORE, J.—This action concerns the rights and obligations of the parties in the process of mortgage foreclosure sales. We hold that the mortgage creditor has exercised the option to accept the sale of the mortgaged property at the upset price by withdrawing the funds paid into the court registry to satisfy the deficiency judgment. This course of conduct precludes the mortgage creditor from demanding resale of the mortgaged property.

## FACTS

On April 24, 1980, the McCaffreys executed a promissory note in the amount of $625,000 to American Federal Savings and Loan Association in exchange for a loan to finance the construction of an 18–unit condominium complex. To secure the indebtedness, the McCaffreys executed a mortgage covering both the planned condominium and the McCaffreys' lakefront home. An additional loan of $103,000, secured in the same fashion, was advanced to complete construction. Ten of the condominium units were sold during 1981, with American releasing its security interest in these units at the time of sale. The remaining eight units remain unsold. The McCaffreys were unable to make the scheduled loan payments. Consequently, American brought suit on the notes and foreclosure on the unsold units. American also requested a deficiency judgment if the proceeds of the sale did not satisfy the McCaffreys' indebtedness. The McCaffreys brought counterclaims, alleging damages due to American's conduct in financing the venture. American obtained partial summary judgment for

$417,972.72 with judgment of foreclosure as to the unsold condominium units. This judgment was later reduced to $390,050.11 by a partial satisfaction of the indebtedness due to a postjudgment sale of one of the condominium units.

On July 15, 1983, a judicial sale was conducted at which American was the sole bidder. American bid $288,000 ($36,000 per unit). American then moved to confirm the sale. The McCaffreys objected, contending that the remaining units were worth $60,000 per unit, and moved for the establishment of an upset price. The motion judge denied American's motion for confirmation, and granted the McCaffreys' motion to establish an upset price. The case was remanded for trial.

McCaffreys' expert testified that the property had a "current market value" of $432,000 ($54,000 per unit) as of August 8, 1983. "Current market value" was defined as "what a willing buyer would pay to a willing seller" under market conditions at that time. This appraiser assumed that competitive bidding at a sheriff's foreclosure sale would produce the same current market value between a willing buyer and a willing seller. His appraisal was based upon comparable sales.

American's expert appraiser testified that the market value of $355,000 ($44,437 per unit) must be severely discounted because competitive bidders would consider the nature of the sale and the possibility of a redemption. The $355,000 figure only applied if there were eight separate, individual, willing buyers, in the context of a competitive market on July 15, 1983, at a market other than a sheriff's sale.

At the conclusion of the hearing, the trial judge entered an order which provides in pertinent part:

At the hearing on October 24, 25 and 26, 1983, pursuant to R.C.W. 61.12.060 and the applicable case law, the court assumed the position of a competitive bidder in determining a fair bid for the property under normal conditions, considering the usefulness of the property

under normal conditions and potential or future value, the type of property involved, the potential future economy, as well as the court's own personal view of the property during the course of the hearing, and other factors which the court believes a competitive bidder would consider in determining the fair value to bid for the property. Based upon consideration of the foregoing factors, the court finds that a fair value of the property is $45,000 per unit for a total fair value of the property of $360,000.

Clerk's Papers, at 118.

The court further ordered, on McCaffreys' motion to confirm, and over American's objection, that the sale was confirmed in the amount of the upset price as of July 15, 1983. The order also provided that the upset price would be applied against American's judgment, also as of July 15, 1983. A deficiency judgment of $37,284.56 was entered after application of the upset price against the judgment. The McCaffreys deposited funds in this amount into the court registry to satisfy the deficiency.

The Court of Appeals granted American's motion for discretionary review on the sole issue of whether the trial court had authority to confirm a judicial sale under the circumstances presented. In a per curiam unpublished opinion the court held that confirmation may be had upon motion of the judgment creditor or successful purchaser on notice to the other parties. RCW 6.24.100. Nothing in the statutory scheme authorizes the trial court to sua sponte confirm a sale over the objection of the judgment creditor/purchaser. Confirmation of the sale was error. The court reversed and remanded for further proceedings.

Prior to the filing of the Court of Appeals opinion, American withdrew on April 27, 1984, the funds the McCaffreys had deposited in the court registry to satisfy the deficiency judgment and applied these funds as a partial satisfaction of its judgment.

The McCaffreys then moved for reconsideration. American moved for an award of attorney fees as provided for in the mortgage agreement. The motion for reconsideration

was denied and the case was remanded for the fixing of attorney fees incurred at trial and upon appeal.

Upon remand to the trial court, the judge entered a second order, providing in pertinent part:

Ordered, adjudged and decreed, that an upset price is established for the condominium units described above in this Order of Forty–five Thousand Dollars ($45,000.00) per unit for a total upset price of Three Hundred Sixty Thousand Dollars, ($360,000.00).

It is further ordered, that Plaintiff has a Deficiency Judgment against Defendants McCaffrey Corporation, Joseph A. McCaffrey and Lucille B. McCaffrey, individually and against their marital community, pursuant to its Judgment of Foreclosure, and after application of the upset price established herein, of $37,284.56, as of July 15, 1983, with interest at the statutory rate from July 15, 1983, until paid.

It is further ordered, that the Court will not confirm the sale of the mortgaged property held July 15, 1983, unless Plaintiff agrees to bid the upset price amount for the mortgaged property of Forty–five Thousand Dollars ($45,000.00) per unit for a total bid of Three Hundred Sixty Thousand dollars, ($360,000.00).

It is further ordered, that the Clerk of the Court shall enter a full satisfaction of the Foreclosure Judgment entered in this action against Defendants, forthwith, upon payment by Defendants of the costs levied against them in the Court of Appeals in the amount of $334.50, plus interest thereon; and it is further

Ordered that this decision is a final judgment and adjudication of the rights of all parties as to all matters and decisions made during the course of the upset price proceedings herein and this judgment is entered herein as a final judgment thereon and there is no just reason for delay.

Clerk's Papers, at 17–18. Although this order does not confirm the sale, it nonetheless credits the upset price against American's judgment and holds that there has been full satisfaction of the judgment. The court determined that the deficiency had been satisfied by the withdrawal from the court registry of the funds deposited by the McCaffreys to satisfy the deficiency.

The court also entered an award of attorney fees. The court found that the McCaffreys had substantially prevailed at trial and American substantially on appeal. The court offset awards to both parties and found a net award of $5,899.45 should be awarded the McCaffreys.

American again appealed to Division One of the Court of Appeals. Subsequent to the trial court's refusal to supersede that portion of the March 6, 1985 order satisfying American's judgment in full, the Court of Appeals entered an order vacating the trial court's order and reinstating American's foreclosure judgment nunc pro tunc to the date of its original entry. An additional order was entered staying American's right to execute on its judgment pending appeal.

The case was then transferred to this court.

PROPRIETY OF THE UPSET PRICE

American initially contends that the McCaffreys did not establish the necessity for fixing an upset price.

Prior to the enactment of the upset price provisions, a trial court in Washington could not refuse to confirm an execution sale on the grounds of mere inadequacy of price. *Mellen v. Edwards,* 179 Wash. 272, 37 P.2d 203 (1934) (depression); *Johnson v. Johnson,* 66 Wash. 113, 119 P. 22 (1911).

The first paragraph of RCW 61.12.060 reads, in pertinent part:

> The court, in ordering the [foreclosure] sale, may in its discretion, *take judicial notice of economic conditions,* and after a proper hearing, fix a minimum or upset price to which the mortgaged premises must be bid or sold before confirmation of the sale.

(Italics ours.)

Subsequent to the enactment of the upset provisions, this court in *Lee v. Barnes,* 58 Wn.2d 265, 273–74, 362 P.2d 237 (1961) held that where property involved is of somewhat unique nature, and a public sale will not assure a price approaching fair value of property will be bid, it is

appropriate for the court to set an upset price pursuant to RCW 61.12.060. More recently, this court stated in *National Bank v. Equity Investors*, 81 Wn.2d 886, 925, 506 P.2d 20 (1973):

It is of little moment in a particular case whether it is temporary economic fluctuations, peculiarly local conditions in the real–estate market, or a national economic depression which will militate against reasonably competitive bidding. If, because of the kind, nature, scope or peculiarities of the property, or a depressed economy, local or general, genuinely competitive bidding will be substantially discouraged or even stifled, the court in its discretion may, under the statute, prescribe an upset price. Thus, we think that the statute is properly invoked in any case where all of the circumstances leading to and surrounding a distress or foreclosure sale warrant the superior court in the exercise of a sound discretion in finding that there will be no true competitive bidding. When in the sound exercise of that discretion the court finds it should fix an upset price, we will not disturb that finding.

*Equity Investors*, at 925.

In *Ferree v. Fleetham*, 7 Wn. App. 767, 502 P.2d 490 (1972), *review denied*, 81 Wn.2d 1010 (1973) the court discussed the meaning of the judicial notice provision. The court held that the trial courts may take judicial notice of prevailing financial and business conditions when they are well established and authoritatively settled, but where there is any doubt as to a fact or its being a matter of common knowledge, evidence thereof should be required. *Ferree*, at 771–72.

■ It is apparent from the language of RCW 61.12.060 and interpretive case law that the mortgagor is not entitled to an upset price in every foreclosure proceeding. The court must exercise its discretion in finding that it should fix an upset price based upon economic conditions or peculiarities of the mortgaged property. Thus, the upset provisions may be invoked in any case where all the circumstances leading to and surrounding a foreclosure sale warrant the exercise of discretion in finding that there will be no true competi-

tive bidding.

At the initial confirmation hearing, the McCaffreys presented evidence that economic conditions at the time of the sale as well as the uniqueness of the condominium units contributed to a lack of competitive bidding. An appraisal of the property was also submitted indicating the fair value of the property exceeded the amount of the sole bid made by the mortgage creditor.

In light of this evidence the motion judge granted the McCaffreys' request to establish an upset price and remanded for a hearing on this matter. At the hearing to establish the upset price, the judge heard additional testimony on the poor economic conditions in the locality at the time of the judicial sale. Further evidence of an economic slump was introduced through exhibits and affidavits. At the conclusion of the hearing, the trial court entered an order which indicates that it considered the economic conditions and nature of the property in making its determination to set an upset price.

We find that the court did not abuse its discretion in finding it should fix an upset price.

### FAIR VALUE DETERMINATION

American next contends that the trial court set an erroneous "fair value" on the mortgaged property.

The court in *Equity Investors* set forth the factors to be considered in determining the fair value of the mortgaged property.

> The statute calls not for what the court would determine to be the *minimum value,* but rather its *fair value.* As we said in *Lee v. Barnes, supra,* the court "should assume the position of a competitive bidder determining a fair bid at the time of sale under normal conditions." This means that, in deciding upon fair value at a foreclosure sale, the court may consider the state of the economy and local economic conditions, the usefulness of the property under normal conditions, its potential or future value, the type of property involved, its unique qualities, if any, and any other characteristics and conditions affecting its marketability along with any other factors which such a

bidder might consider in determining a fair bid for the mortgaged property. The court may properly receive any competent evidence, whether opinion or of direct facts which might affect the amount of such a bid.

*Equity Investors,* at 926. Thus, the court may consider: (a) the state of the economy in the Puget Sound region; (b) the supply and demand for apartment complex projects; (c) apartment occupancy factors; (d) apartment rent structures; (e) the potential future values of the property; (f) the potential future economy of the community surrounding the property; and (g) the actual cost of land, labor, and materials which have been invested in the completion of the apartment complex. *National Bank v. Equity Investors,* 86 Wn.2d 545, 548, 546 P.2d 440 (1976).

■ In the present action the court looked at these factors in setting the upset price. In view of the wide range of figures provided by the appraisers and the position of the trial court to evaluate the witnesses and to determine from the evidence what might be a fair price for the property, the court did not abuse its discretion in setting an overall price of $360,000.

### APPLICATION OF THE UPSET PRICE
### TO THE JUDGMENT

In transactions involving both notes and mortgages, the notes represent the debts, the mortgages security for payment of the debts. Either may be the basis of an action. *Seattle Sav. & Loan Ass'n v. Gardner J. Gwinn, Inc.,* 171 Wash. 695, 698, 19 P.2d 111 (1933); *Wilson v. Kirchan,* 143 Wash. 342, 346–47, 255 P. 368 (1927); *see also* G. Nelson & D. Whitman, *Real Estate Finance Law* § 8.1, at 594–95 (2d ed. 1985). The mortgagee may sue and obtain a judgment upon the notes and enforce it by levy upon any property of the debtor. If the judgment is not satisfied in this manner, the mortgagee still can foreclose on the mortgaged property to collect the balance. Alternatively, the mortgagee may foreclose on the mortgaged property and obtain a deficiency judgment. *Seattle Sav.,* at 698–99; *see also Citizens Nat'l*

*Bank v. Abbott,* 72 Wash. 73, 78, 129 P. 1085 (1913); *Hanna v. Kasson,* 26 Wash. 568, 571–72, 67 P. 271 (1901); *Real Estate Finance Law* § 8.1, at 594–95. Concurrent actions to obtain execution of a judgment and foreclose on the mortgaged property are prohibited. RCW 61.12.120; *see also Seattle Sav.,* at 698–99.

The procedures for judicial foreclosure of a mortgage and sheriff's sale are contained in RCW 61.12 and RCW 6.24, respectively. RCW 61.12.060 grants the trial court the authority to set an upset price either before or after the sale of the mortgaged property and to require that the price be credited against the judgment as a condition to confirmation of the sale.

RCW 6.24.100(1) sets forth the procedure to be followed by the court in confirming a judicial sale. That statute provides in part:

> The *judgment creditor or successful purchaser* at the sheriff's sale . . . shall be entitled, on motion with notice given to all parties . . . to have an order confirming the sale, unless the judgment debtor . . . shall file . . . his objections thereto.

(Italics ours.) As the Court of Appeals correctly noted in its prior opinion, it is the judgment creditor or successful purchaser who moves for confirmation.

A foreclosure sale becomes valid and complete only upon confirmation by the court. A bid at sale is merely an offer to purchase that does not become binding until confirmation. *In re Spokane Sav. Bank,* 198 Wash. 665, 670–74, 89 P.2d 802 (1939); *Real Estate Finance Law* § 7.17, at 530. Under either RCW 6.24.100 or 61.12.060 then, the successful bidder at the foreclosure sale merely offers his bid to the court for acceptance at time of confirmation. The fact that the successful bidder is merely an offerer limits the court's discretionary powers to confirmation of the bid on motion of the purchaser or the establishment of an upset price which in essence is a rejection of the bid and a counteroffer to the purchaser.

It seems clear that the statutory scheme does not con-

template that the judgment creditor can be forced to buy the mortgaged property at all, and therefore clearly not at a price set by the court. The language of the statute, which provides that the purchaser may be required to credit the upset price on the foreclosure judgment as a condition of confirmation, indicates the purchaser has the choice of not having the sale confirmed at the upset price.

This court has concluded that the upset provisions in RCW 61.12.060 were adopted directly from the opinion of the Wisconsin Supreme Court in *Suring State Bank v. Giese,* 210 Wis. 489, 246 N.W. 556 (1933). *Lee v. Barnes,* 61 Wn.2d 581, 584, 379 P.2d 362 (1963); *National Bank v. Equity Investors,* 81 Wn.2d 886, 925, 506 P.2d 20 (1973). In *Suring* the Wisconsin Supreme Court concluded that the existence of a general depression empowers the trial court to grant three types of relief: (1) to refuse to confirm the sale if the bid is substantially inadequate or if inadequacy is coupled with an emergency that prevents competitive bidding; (2) to establish an upset price; or (3) to condition confirmation on credit of the fair market value against the debt, even if the credit precludes a deficiency judgment. Although the trial court had granted the third type relief, the Wisconsin Supreme Court reversed because the mortgagee should have been given the option to accept or reject the condition. *Suring,* at 493–94.

In *Wahl v. H.W. & S.M. Tullgren, Inc.,* 222 Wis. 306, 309, 267 N.W. 278 (1936) the court held that *Suring*

> did not intend to promulgate the doctrine that the court may fix an upset price and then both confirm the sale and deny a deficiency judgment. It is plainly stated that, when an upset price is fixed, the plaintiff is not compelled to accept confirmation. He must be given the option to reject it and take a resale.

*Accord, First Nat'l Bank & Trust Co. v. Plous Bros.,* 224 Wis. 634, 272 N.W. 861 (1937).

Thus, our statutory scheme clearly contemplates that the purchaser has the option of accepting or rejecting the upset price. If the price is accepted, the creditor is entitled to a

deficiency judgment for the balance due on the mortgage and costs which may remain unsatisfied after the upset price is credited against the mortgage. If the upset price discharges the mortgage debt, no deficiency shall be granted. RCW 61.12.060–.070. In the event the successful bidder rejects the upset price, the statute contemplates a resale of the mortgaged property at or above the upset price.

At first blush, application of this statutory scheme to the instant foreclosure action would indicate that, because American declined to move for confirmation of the sale at the upset price, a resale of the mortgaged property is the appropriate recourse. Pending the initial appeal in this action, however, American withdrew from the court registry the funds deposited by the McCaffreys to satisfy the deficiency judgment that remained after establishment of the upset price. Despite its rejection of the upset price as a condition of confirmation, American contends that it had the right to seize these funds and apply them in partial satisfaction of its judgment.

■ We disagree. As previously noted, concurrent actions to obtain execution of a judgment and foreclosure on the mortgaged property are prohibited. RCW 61.12.120. *See also Seattle Sav. & Loan Ass'n v. Gardner J. Gwinn, Inc.,* 171 Wash. 695, 19 P.2d 111 (1933); *Gray v. Davison,* 78 Wash. 482, 139 P. 219 (1914). Thus, there may be no levy upon the other real or personal property of the mortgage debtor after initiation of a foreclosure action unless the judgment remains unsatisfied after applying thereon the proceeds of the sale of the mortgaged property. *Lassen v. Curtis,* 40 Wn.2d 82, 86, 241 P.2d 210 (1952). In response to a mortgagee's contention that it should be entitled to levy on other property to satisfy a *potential* deficiency, this court stated in *Advance Thresher Co. v. Schimke,* 47 Wash. 162, 163–64, 91 P. 645 (1907):

> Here the appellant by foreclosure is primarily subjecting the mortgaged property to the payment of secured notes. It claims no remedy under the writ of attachment until it

shall first exhaust the property covered by its mortgage. It does contend, however, that by reason of the inadequate value of the mortgaged property, it will be entitled to a deficiency judgment for at least $500, and that it is now entitled to a writ of attachment in advance of such judgment, to secure the same. It cannot know that the contingency of a deficiency judgment will ever arise, for while it may be unwilling to bid the full amount of its claim at foreclosure sale, some other person may do so. Although appellant has by contract extended credit to respondents on the notes and mortgage, it is now pursuing two remedies at one and the same time, one by foreclosure on the mortgaged property, and the other by attachment of additional property to secure a possible deficiency judgment. How can it, in advance of such deficiency judgment, which it may never obtain, comply with Bal. Code, § 5351 (P.C. § 511), which requires that the affidavit for attachment shall specify the amount of indebtedness? While it is true that, strictly speaking, an attachment is not a separate action, but an ancillary proceeding, it would, if resorted to before judgment, be an additional remedy not contemplated in foreclosure proceedings under our statutes. The evident spirit and intent of § 5893 [RCW 61.12.120] was to prevent plaintiffs from harassing defendants, in foreclosure actions, with ancillary proceedings prosecuted before judgment, for the purpose of seeking additional and concurrent remedies other than those authorized by statute, or arising in the usual course of procedure. It was to prohibit a mortgagee securing, by writ of attachment or otherwise, an additional remedy in anticipation of a deficiency judgment, while looking to the mortgage security, and before exhausting the same by foreclosure and sale.

It is likewise true in the instant proceeding that American did not institute a separate action on its judgment; but American went to the court and, armed with its judgment, withdrew the funds the McCaffreys had deposited. This is in violation of the statutory scheme and wholly inconsistent with American's claim raised on appeal that the upset price did not reflect the fair value of the property and that American did not desire to have the upset price credited against its judgment and obtain the deficiency judgment. A

deficiency exists only on the other property of the mortgagor for the balance due on the mortgage, and costs which remain unsatisfied *after the sale* of the mortgaged property. RCW 61.12.070.

The sole statutory basis for withdrawing the funds from the court registry was in satisfaction of the deficiency judgment established by the trial court order. In withdrawing these funds American acceded to the trial court's establishment of the upset price and confirmation of the sale. At this juncture American's actions were wholly inconsistent with its pending appeal. The Court of Appeals was unaware of these actions when it ruled that confirmation should be set aside. Thus, American obtained two inconsistent remedies to the prejudice of the McCaffreys. American had obtained other funds of the McCaffreys in the amount of a potential deficiency judgment without first satisfying the indebtedness out of the mortgaged property. The trial court appropriately resolved this inconsistency on remand by crediting the upset price against American's judgment.[1] This in effect forces American to accept the mortgaged property at the upset price as determined by the court.

## ATTORNEY FEES

The mortgages securing the funds borrowed from American contain provisions for award of reasonable attorney fees in any suit brought for the foreclosure of the mortgage or defending or protecting the same. Both parties now request appropriate attorney fees for this appeal, and American contests the trial court's previous award of fees to the McCaffreys subsequent to the first appeal.

The "prevailing party" means the party in whose favor a final judgment is rendered for purposes of awarding attor-

---

[1] Prior to the trial court's second order, American moved to correct the amount of its judgment because of an alleged $12,000 error made by the sheriff and not detected by American until after the return of the sale had been filed. The court denied this motion. We find no error in this order. Not only did American not raise this objection for 8 months after the sheriff's return of the sale, American has waived any alleged irregularities in the sheriff's sale by accepting the deficiency judgment.

ney fees in an action on contract. RCW 4.84.330. Stated differently, the "prevailing party" in a lawsuit is one who receives a judgment in his favor. *Andersen v. Gold Seal Vineyards, Inc.,* 81 Wn.2d 863, 505 P.2d 790 (1973); *Ennis v. Ring,* 56 Wn.2d 465, 353 P.2d 950 (1959).

The McCaffreys have substantially prevailed in this action and, thus, are entitled to an award of attorney fees on appeal and at trial. The trial court has made a previous award for the initial appeal and trial which we will not disturb. The case is remanded to the trial court for the determination of a reasonable award of attorney fees on appeal. RAP 18.1(e).

## CONCLUSION

We affirm the trial court's order crediting the upset price against American's foreclosure judgment, the entry of a deficiency judgment, and the entry of an order of full satisfaction of the foreclosure judgment. We remand for an award of attorney fees on appeal to the McCaffreys.

DOLLIVER, C.J., UTTER, BRACHTENBACH, PEARSON, ANDERSEN, GOODLOE, and DURHAM, JJ., and CUNNINGHAM, J. Pro Tem., concur.

Reconsideration denied February 25, 1987.