[No. 23554-8-III.   Division Three.   December 14, 2006.]

WELCH FOODS, INC., *Appellant*, v. BENTON COUNTY, *Respondent*.

316

*Norman J. Bruns*, for appellant.

*Cassandra Noble* (of *Environmental Hearings Office*) and *Andrew K. Miller*, *Prosecuting Attorney*, and *Ryan K. Brown*, *Deputy*, for respondent.

¶1 BROWN, J. — Today, we review a property tax assessment dispute between Welch Foods, Inc., and Benton County (County). The trial court dismissed Welch's suit for a partial refund of taxes paid under protest for tax years

1997-2002, concluding Welch had failed to meet its burden of proof that the County's assessment methodology resulted in an improper tax assessment. Unusual is the use of an agreement contained in a stipulation for judgment in a prior tax suit. The court decided the agreement established that $5.7 million would be the starting point for future valuations, consistent with the assessor's trended-investment assessment methodology evidence. The court found Welch's expert testimony not credible. Because the findings of fact are supported by substantial evidence and we find no error in the conclusions of law, we affirm.

## FACTS

¶2 Disputed are assessments on Welch's extensive juice and jelly facility in Kennewick. Undisputed are land value and certain exemptions. The disputed assessments for 1997 to 2002 are in order: $6,792,160; $7,007,420; $5,907,280; $6,880,380; $7,946,780; and $9,164,680. Welch paid about $335,000 under protest, and then filed refund suits that were consolidated for trial.

¶3 In prior assessment litigation for 1991-96, the parties entered a stipulation for judgment containing an agreement setting the assessed value for the Welch property at $5.7 million for 1996. The parties intended "to establish an agreed assessment approach in assessment year 1997 and thereafter." Clerk's Papers (CP) at 210. The parties further intended "to avoid costly litigation" by using the 1996 assessed value "[a]s a starting point for the 1997 assessed value." CP at 211. The assessor would then adjust the amount based on additions or deletions of assets at the plant.

¶4 In a February 2004 bench trial, Welch's experts used an unusual hybrid cost-income assessment methodology, starting at $3.5 million. The County used a trended-investment assessment methodology, a cost approach commonly used by county tax assessors, starting with the agreed $5.7 million market valuation. The assessor, Barbara Wagner,

testified she thought the actual assessments were wrong because they were too low, but she believed she was bound to start at a $5.7 million market value.

¶5 Welch argued the facility value decreased due to underutilization and closure risk. Ms. Wagner testified the County took obsolescence into account. She testified the County "was very generous" in assessing value because of the carry over amount used as the starting point for valuation. At trial outset, the County admitted a small discrepancy because their chief appraiser, Mark Fortune, neglected to delete depreciation on certain items of machinery and equipment. Mr. Fortune proposed:

| Original Value | Depreciated Value | Corrected Value |
| --- | --- | --- |
| $6,792,160 | $94,760 | $6,697,400 |
| $7,007,420 | $89,050 | $6,918,370 |
| $5,907,280 | $83,100 | $5,824,180 |
| $6,888,380 | $77,090 | $6,811,290 |
| $7,946,780 | $72,610 | $7,874,170 |
| $9,164,680 | $67,720 | $9,096,960 |

CP at 71. No materiality or quantification for the discrepancy is in the record.

¶6 The trial court received testimony and argument about the agreement and at the end of trial when a certified copy of the stipulation for judgment was offered as an exhibit, the court instead took judicial notice of it. The agreement was attached to the County's trial brief in support of its starting point argument.

¶7 After closing arguments, the judge requested briefing on the presumption of correctness afforded the assessor's value determination. In May, the judge ruled the presumption was eliminated since the County acknowledged "the original assessments were incorrect," apparently referring to Mr. Fortune's correction testimony. Report of Proceedings (RP) (May 20, 2004) at 28. The court ruled Welch's burden of proof, therefore, was reduced to a preponderance of the evidence.

¶8 On August 25, the judge asked for briefing from Welch regarding the impact of the settlement agreement on future

assessment. The court began to discuss the presumption of correctness. Welch's counsel reminded the court it already ruled on that point. The court replied, "Right, right." RP (Aug. 25, 2004) at 21. Welch's counsel explained his client needed a decision for fiscal-year budgeting by month's end and would let the court know its position. On August 31, Welch, by facsimile, told the court it had "no choice but to obtain a writ of mandamus" to get a ruling. CP at 80.

¶9 On September 1, the court filed its memorandum decision. Considering the County's presumption of correctness in light of the County's assertion the assessed values were "too low," the court reasoned Welch failed to overcome the presumptions by a preponderance of the evidence, "that the market value is at least equal to the assessed value." CP at 206. Welch failed to show that its property was over-assessed in relation to its market value.

¶10 In October 2004, the court entered findings of fact and conclusions of law consistent with the memorandum decision. The court found the assessor properly used the "agreed-upon" starting point of $5.7 million and "added and deleted items as they were reported by the taxpayer." CP at 147. The additions and deletions were properly adjusted using Department of Revenue tables according to the trended-investment methodology "commonly-used by county assessors." *Id.* It found no evidence showed Mr. Fortune's "omissions were material, significantly refuting or quantifying any difference from the Assessor's ultimate valuations for the six years at issue." CP at 148.

¶11 The court concluded, "the Assessor's methodology and calculations resulted in the true and fair value, the market value, for Welch's real and personal property" in the relevant tax years. CP at 149. The court concluded, "Welch has not met its burden of persuading the Court by a preponderance of the evidence that the Assessor's value decisions for each of the six years at issue were unlawful and should be overturned." CP at 150. After entry of the dismissal judgment, Welch appealed.

## ISSUE

¶12 Did the trial court correctly conclude that Benton County's trended-investment method for calculating assessed values produced proper market values for Welch's Kennewick property for tax years 1997-2002 and dismiss Welch's suit for a partial refund of those property taxes paid under protest? Welch contends the court erred in considering, interpreting, and applying the agreement in the stipulation for judgment.

¶13 Preliminarily, we reject the County's argument that Welch waived its assignments of error by failing to properly reference the challenged findings of fact. RAP 10.3(a)(5). Welch provided legal authority and references in the argument section of its brief and provided the findings and conclusions in an appendix to its reply brief. Thus, the suggested RAP violation has not hindered our review.

## ANALYSIS

¶14 Welch initially challenges all but one of the findings of fact and all but one of the conclusions of law. We review a trial court's findings of fact and conclusions of law to determine whether the findings are supported by substantial evidence in the record and, if so, whether the conclusions are supported by those findings. *Scott v. Trans-System, Inc.*, 148 Wn.2d 701, 707-08, 64 P.3d 1 (2003).

¶15 The first step in reviewing a taxpayer's challenge to a municipality's tax assessment is to establish the taxpayer's standard of proof. Normally, when reviewing an assessor's determination of value, courts are to presume the assessor's determination is correct. RCW 84.40.0301. Here, the County admitted Mr. Fortune made minor calculation errors, but the County did not admit error in using its trended-investment assessment approach to reach market value. Thus, in May the court initially ruled Welch's burden of proof was a preponderance of the evidence because:

(1) if a taxpayer overcomes the presumption of correctness on a specific value, the standard of proof shifts to preponderance of

the evidence for all contested issues related to that value; and (2) if a taxpayer overcomes the presumption on the assessor's overall approach or technique, *i.e.*, invalidates the technique, the standard of proof shifts to a preponderance of the evidence for all issues.

*Weyerhaeuser Co. v. Easter*, 126 Wn.2d 370, 381, 894 P.2d 1290 (1995). "The taxpayer retains the burden of persuasion at all times." *Id*.

■ ¶16 The court's September memorandum decision partly states Welch's burden is to "prove by a preponderance of the evidence that a correction to the assessed value is required." CP at 205-06. But, in its October findings of fact, the court found the miscalculations were immaterial; therefore, the court found the County's values were correct, "[b]ased upon the presumption of correctness." CP at 148. Generally, a trial ruling is subject to further study and "may be altered, modified, or completely abandoned. It has no final or binding effect, unless formally incorporated into the findings, conclusions, and judgment." *Ferree v. Doric Co.*, 62 Wn.2d 561, 567, 383 P.2d 900 (1963).

■ ¶17 Thus, we are guided by the judge's final rulings and apply the *Weyerhaeuser* rules noted above. Under *Weyerhaeuser*, Welch's standard of proof is a preponderance of the evidence for all contested issues related to the values, not the overall approach or technique.

■ ¶18 "Burden of proof can be divided into two tasks—a burden of production and a burden of persuasion." *Nw. Pipeline Corp. v. Adams County*, 132 Wn. App. 470, 475, 131 P.3d 958 (2006). "The burden of persuasion defines the degree of certainty with which the fact finder must decide the issues." *Id*. (citing *In re Det. of Skinner*, 122 Wn. App. 620, 629, 94 P.3d 981 (2004) (citing 2 JOHN W. STRONG, McCORMICK ON EVIDENCE § 336 (5th ed. 1999)), *review denied*, 153 Wn.2d 1026 (2005)).

■ ¶19 On appeal, we are concerned with the burden of production (i.e., the substantial evidence test). *Nw. Pipeline*, 132 Wn. App. at 475. The finder of fact determines whether the burden of persuasion has been met. *Renz v.*

*Spokane Eye Clinic, PS*, 114 Wn. App. 611, 623, 60 P.3d 106 (2002). "[This court's] application of the substantial evidence test is not influenced by the burden of persuasion." *Nw. Pipeline*, 132 Wn. App. at 475. Here, we must affirm if we find substantial evidence in the record supporting the trial court's findings that the 1997 to 2002 values were $6,792,160; $7,007,420; $5,907,280; $6,880,380; $7,946,780; and $9,164,680, respectively.

¶20 Substantial evidence is more than " 'a mere scintilla' " of evidence. *Campbell v. ITE Imperial Corp.*, 107 Wn.2d 807, 818, 733 P.2d 969 (1987) (quoting *Hojem v. Kelly*, 93 Wn.2d 143, 145, 606 P.2d 275 (1980)). It is sufficient if it " 'would convince an unprejudiced thinking mind of the truth of the fact' " to which the evidence is directed. *Davis v. Microsoft Corp.*, 149 Wn.2d 521, 531, 70 P.3d 126 (2003) (emphasis omitted) (quoting *Thomson v. Va. Mason Hosp.*, 152 Wash. 297, 300-01, 277 P. 691 (1929)).

■ ¶21 Contrary to Welch's argument, the values established by the court are not bald assumptions unsupported by evidence. Welch did not meet its burden of persuading the court by a preponderance of the evidence that the assessor's values were incorrect. The County's evidence showed the trended-investment methodology is commonly used by county assessors. The use of the Department of Revenue tables in the County's calculations is accepted practice. The record provides ample support for the values; particularly persuasive is the evidence from Mr. Fortune and the parties' prior agreement in the stipulation for judgment.

¶22 On the last point, Welch contends the court erred in recognizing, interpreting, and applying the agreement in the stipulation for judgment. Welch argues the court erred in taking judicial notice of the parties' prior agreement because a court may not, while deciding one case, take judicial notice of records in another separate judicial proceeding. Actually, at the close of evidence, the County asked the court to formally admit the stipulation as an exhibit, but the court broke in, saying, "I think you asked me to take

judicial notice of that. And I will." RP (Feb. 27, 2004) at 739. Welch did not then object.

¶23 The County correctly argues Welch waived any objection by not objecting. The absence of an objection to judicial notice deprives the court " 'of the opportunity to make a proper record to sustain its observation.' " *Fusato v. Wash. Interscholastic Activities Ass'n*, 93 Wn. App. 762, 772, 970 P.2d 774 (1999) (quoting *State v. Sly*, 58 Wn. App. 740, 749, 794 P.2d 1316 (1990)). Moreover, we review judicial notice decisions de novo. *Id.* at 779. Courts may take judicial notice of records from a different proceeding to establish the truth of the matters contained therein. *In re Det. of Henrickson*, 140 Wn.2d 686, 695, 2 P.3d 473 (2000). And, trial courts may take judicial notice of prevailing financial and business matters when they are well established and authoritatively settled unless doubt exists as to the fact or if it is a matter of common knowledge. *Ferree v. Fleetham*, 7 Wn. App. 767, 771-72, 502 P.2d 490 (1972); ER 201.

¶24 Here, the County presented testimony that the starting point for valuing Welch's property was the 1996 value under the agreement. The agreement was relevant to the 1996 value. The agreement was attached to the County's trial brief. Welch argued the agreement did not prevent using a different market value and presented expert valuation evidence the court ultimately found incredible. In fairness to the County, the County did offer the stipulation for judgment in evidence and the judge's response was tantamount to admission. Given all, the court did not err in considering the agreement.

¶25 Next, Welch argues the stipulation for judgment was not listed as an issue before the court prior to trial. LCR 16(e) of the Local Court Rules of Benton County Superior Court requires parties to identify on a trial management report the issues in dispute. The agreement is not an issue, but evidence. Hence, LCR 16(e) is inapplicable.

¶26 Welch next argues the court did not correctly interpret the contract but fails to show any ambigu-

ity needing interpretation or illegality. In construing a contract, great weight is given to the parties' intent. *In re Estates of Wahl*, 99 Wn.2d 828, 830-31, 664 P.2d 1250 (1983). We read a contract as a whole and will not read an ambiguity into an unambiguous contract. *Berg v. Hudesman*, 115 Wn.2d 657, 669, 801 P.2d 222 (1990).

¶27 The agreement plainly states the parties agreed "to avoid costly litigation" by using the 1996 assessed value "[a]s a starting point for the 1997 assessed value." CP at 211. Further, the agreement shows the parties' intent "to establish an agreed assessment approach in assessment year 1997 and thereafter." CP at 210. They agreed the assessor would adjust the valuation based on plant additions or deletions.

¶28 The agreement provided it "shall in no way deny Welch the right to challenge subsequent valuations." CP at 211. Welch unpersuasively argues that using the 1996 value as a starting point limited its right to challenge subsequent valuations. And, Welch's ultra vires argument is also unpersuasive; agreeing to a starting point for property valuation does not provide special treatment to one taxpayer over another. The court aptly likened the starting point as an arm's-length market value agreement between the parties.

¶29 Welch contends the court failed to address two issues: (1) the market value for Welch's real property improvements on January 1 of 1997-2002 and (2) the level of assessment for all of Welch's taxable property on those dates. We disagree. Welch merely looks at its evidence without acknowledging the County's valuation evidence and the court's fact-finding and credibility-deciding roles. The court found the "agreement produced a fair and agreed-upon value that was the best indication of market value and the Court does not accept the Welch experts' lower valuation opinions for the years at issue and prior, or the reasons given for them." CP at 147.

¶30 RCW 84.40.030 allows market value evaluations. *Folsom v. County of Spokane*, 106 Wn.2d 760, 762-63, 725

P.2d 987 (1986). An assessor may use a market approach, a cost approach, and a capitalization of income approach when assessing market value. *Id* at 763. Assessors should rely most heavily on the cost and income approaches in valuing properties of a "complex nature," or property not having a recorded sale within five years, and not having a significant number of sales of comparable property in the general area. *Id.*

¶31 Tax uniformity is required in Washington. WASH. CONST. art. VII, § 1. Tax uniformity is " 'the highest and most important of all requirements applicable to taxation under our system.' " *Inter Island Tel. Co. v. San Juan County*, 125 Wn.2d 332, 334, 883 P.2d 1380 (1994) (quoting *Savage v. Pierce County*, 68 Wash. 623, 625, 123 P. 1088 (1912)). " 'If the basis of valuation is the true market value of the property, then that basis must be applied to all alike. If the basis is a certain per cent of the true market value, the same percentage must be applied to all alike.' " *Id.* at 335 (quoting *Pac. Tel. & Tel. Co. v. Wooster*, 178 Wash. 180, 184, 34 P.2d 451 (1934)). Welch did not establish any departure from these principles.

¶32 Instead, the trial court found the assessor employed an accepted variation of the cost-less-depreciation methodology. The court concluded the correct level of assessment was 100 percent of the true and fair value. The findings support these conclusions. Welch is not entitled to tax refunds for 1997 through 2002.

¶33 Lastly, the parties both suffered lengthy delay after submitting this hard fought, complex case. Rather than procrastinating, the court conducted additional hearings, solicited additional briefing, and received additional argument before its final rulings.

¶34 Affirmed.

KATO and KULIK, JJ., concur.