[No. 66420-4-I.   Division One.   March 19, 2012.]

*In the Matter of the Trustee's Sale of the Real Property of* RUSS E. BURNS ET AL.

BOEING EMPLOYEES' CREDIT UNION, *Appellant*, v. RUSS E. BURNS ET AL., *Respondents*.

*John D. Du Wors* (of *Newman De Wors LLP*), for appellant.

*N. Brian Hallaq* and *Jan Gossing* (of *BTA Lawgroup PLLC*), for respondents.

¶1 Cox, J. — Entry of a judgment on a promissory note does not extinguish the lien of a security interest in real property that secures that note.[1] And the homestead exemption is unavailable for debts secured by deeds of trust that have been executed and acknowledged by the owners of the encumbered premises.[2]

¶2 Here, Boeing Employees' Credit Union (BECU) is the holder of a subordinate deed of trust for property sold at a trustee's sale at the direction of Wells Fargo Bank, the holder of a senior deed of trust. The lien of the BECU deed of trust against the real property sold at this trustee's sale was transferred to and attached in first priority to the

---

[1] *Am. Fed. Sav. & Loan Ass'n of Tacoma v. McCaffrey*, 107 Wn.2d 181, 189, 728 P.2d 155 (1986); *Hanna v. Kasson*, 26 Wash. 568, 571-72, 67 P. 271 (1901).

[2] RCW 6.13.080(2).

surplus funds deposited into the court registry.[3] The homestead claimed by Russ and Suzanne Burns, husband and wife, is not available against the BECU obligation secured by that deed of trust.[4] Accordingly, BECU is entitled to the surplus sales funds that are sufficient to satisfy the Burnses' unpaid debt to BECU.[5] We reverse and remand for further proceedings.

¶3 In December 2004, the Burnses executed and delivered a promissory note in the face amount of $220,000.00 to Wells Fargo. In order to secure payment of that note, the Burnses also executed and delivered to Wells Fargo a deed of trust dated December 7, 2004, that encumbered their residential property. The deed of trust was recorded on December 13, 2004.

¶4 In October 2005, the Burnses also executed and delivered to BECU a promissory note in the face amount of $85,000.00. In order to secure payment of that note, the Burnses executed and delivered to BECU a deed of trust dated October 24, 2005, that also encumbered their residential property. The deed of trust was recorded on November 3, 2005. This deed of trust is subordinate in priority to the lien of the Wells Fargo deed of trust on the Burnses' residence.

¶5 The Burnses defaulted on the note to BECU. Based on these defaults, the successor trustee for the deed of trust in favor of BECU recorded a notice of trustee's sale on December 5, 2008.[6] Thereafter, on February 24, 2009, the successor trustee recorded a notice of discontinuance of this scheduled sale.[7]

---

[3] RCW 61.24.080(3).

[4] RCW 6.13.080(2).

[5] RCW 61.24.080(3); *In re Tr.'s Sale of Real Prop. of Upton*, 102 Wn. App. 220, 224-25, 6 P.3d 1231 (2000).

[6] Clerk's Papers at 51.

[7] *Id.* at 56.

¶6 BECU then commenced an action against the Burnses on the delinquent promissory note. On April 14, 2009, the superior court entered its order of default and default judgment in favor of BECU against the Burnses for $81,986.52.[8]

¶7 BECU began garnishment proceedings against the Burnses. Due to the Burnses' filing of a petition in bankruptcy, BECU ultimately failed to collect any payments to satisfy the Burnses' debt.[9]

¶8 On November 20, 2008, the successor trustee for Wells Fargo's deed of trust recorded a notice of trustee's sale because of the Burnses' delinquencies under their promissory note to the bank. The sale was originally scheduled for February 20, 2009. Following several continuances, the sale occurred on August 20, 2010.[10] This sale generated net surplus sales funds in the amount of $100,648.42, which were deposited into the registry of the court.[11]

¶9 Following the deposit of the surplus funds from the trustee's sale into the King County Superior Court clerk's registry, BECU moved for an order directing payment of a portion of these funds to satisfy the Burnses' unpaid debt. The Burnses also moved for disbursement of these funds, claiming that the BECU deed of trust was extinguished by entry of the default judgment. According to the Burnses, the claimed extinguishment of BECU's deed of trust lien entitled them to the funds under the homestead provisions of state law. In sum, each side claimed a superior right to the funds under RCW 61.24.080.

¶10 A court commissioner ruled that "BECU's deed of trust and promissory note merged when BECU obtained a

---

[8] *Id.* at 69.

[9] Report of Proceedings (Dec. 10, 2010) at 4.

[10] *Id.* at 1.

[11] *Id.* at 2.

judgment" on the promissory note.[12] Accordingly, the commissioner ruled that the Burnses were entitled to the surplus funds.

¶11 BECU moved for revision of the court commissioner's ruling. The superior court denied the motion.

¶12 BECU appeals.

## STANDARD OF REVIEW

¶13 We review de novo questions of legal interpretation of the "Deeds of Trust Act."[13] A court's primary duty in interpreting any statute is to discern and implement the intent of the legislature.[14] A court will look to the statute's plain language.[15] If the statute is unambiguous, the inquiry ends.[16] A statute is unambiguous when it is not susceptible to two or more reasonable interpretations.[17]

¶14 Where the superior court has made a decision on a motion for revision, the appeal is from the superior court's decision, not from the commissioner's decision.[18]

¶15 Here, the dispositive question is whether BECU's deed of trust was extinguished by entry of judgment in its favor on the Burnses' promissory note. If the deed of trust was not extinguished, then it is undisputed that the homestead exemption is not effective to defeat BECU's claim to

---

[12] Clerk's Papers at 82.

[13] *Beal Bank, SSB v. Sarich*, 161 Wn.2d 544, 547, 167 P.3d 555 (2007).

[14] *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003) (citing *Nat'l Elec. Contractors Ass'n v. Riveland*, 138 Wn.2d 9, 19, 978 P.2d 481 (1999)).

[15] *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 451, 210 P.3d 297 (2009) (citing *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007)).

[16] *State v. Bunker*, 169 Wn.2d 571, 582-83, 238 P.3d 487 (2010) (Sanders, J., dissenting) (quoting *Armendariz*, 160 Wn.2d at 110).

[17] *State v. Delgado*, 148 Wn.2d 723, 726-27, 63 P.3d 792 (2003) (citing *State v. McGee*, 122 Wn.2d 783, 787, 864 P.2d 912 (1993)).

[18] *State v. Ramer*, 151 Wn.2d 106, 113, 86 P.3d 132 (2004).

the surplus funds.[19] Conversely, if the deed of trust were extinguished, the homestead exemption is effective with respect to BECU's judgment lien.[20] We review de novo this question of law regarding interpretation of the Deeds of Trust Act.[21]

¶16 The Burnses argue that we should review the lower court's decision for abuse of discretion. They are mistaken.

¶17 They cite to our decision in *Wilson v. Henkle*.[22] That case is distinguishable. In *Wilson*, funds held in a court registry were awarded to the plaintiffs in an unlawful detainer action.[23] Prior to the actual disbursement of these funds, the defendant's attorney brought a separate action to garnish the same funds.[24] A commissioner then signed an order vacating the prior judgment, based on the order requiring garnishment in the attorney's favor.[25] Thus, in a case where there were two different and contradictory judgments and orders, we held that "[a] motion to vacate a judgment is addressed to the sound discretion of the trial court, whose judgment will be undisturbed absent a showing of a manifest abuse of discretion."[26]

¶18 Here, BECU has not moved to vacate the judgment. It has appealed the superior court's decision. *Wilson* is inapposite.

## TRUSTEE'S SALE SURPLUS FUNDS

¶19 BECU argues that its deed of trust was not extinguished by entry of judgment on the delinquent Burnses'

---

[19] *Upton*, 102 Wn. App. at 224-25.

[20] *Id.* at 224.

[21] *Beal Bank*, 161 Wn.2d at 547-48.

[22] 45 Wn. App. 162, 724 P.2d 1069 (1986).

[23] *Id.* at 164.

[24] *Id.* at 164-65.

[25] *Id.* at 165.

[26] *Id.* at 166.

promissory note. It also argues that the doctrine of merger does not defeat its claim to the surplus sales proceeds. In sum, it claims that it has a right under RCW 61.24.080(3) to so much of the sales proceeds as are necessary to satisfy the Burnses' unpaid debt. We agree.

*Washington Case Law and the Deeds of Trust Act*

¶20 Our examination of the questions before us begins with consideration of relevant Washington case law regarding mortgages. First, the state supreme court has stated that a deed of trust is "in general a species of mortgage."[27] This principle is expressly memorialized in the Deeds of Trust Act, which states that "[e]xcept as provided in this [act], ***a deed of trust is subject to all laws relating to mortgages on real property.***"[28] Thus, case law respecting mortgages generally can be useful in deciding issues regarding deeds of trust, except where the Deeds of Trust Act dictates otherwise.

¶21 Second, a note is a separate obligation from the deed of trust or mortgage that secures that note.[29] Thus, entry of judgment on a note does not necessarily affect the rights or remedies provided for a deed of trust or mortgage securing that note.

¶22 *Hanna v. Kasson*,[30] which the supreme court decided in 1901, is particularly instructive in applying these two principles. There, Savage executed a note that was secured by a mortgage on property purchased in 1890.[31] The note matured of its own terms, and the holder of the note and mortgage obtained a judgment solely on the note

---

[27] *Rustad Heating & Plumbing Co. v. Waldt*, 91 Wn.2d 372, 376-77, 588 P.2d 1153 (1979).

[28] RCW 61.24.020 (emphasis added).

[29] *Metro. Mortg. & Sec. Co. v. Becker*, 64 Wn. App. 626, 631, 825 P.2d 360 (1992).

[30] 26 Wash. 568, 67 P. 271 (1901).

[31] *Id.* at 570.

in superior court.[32] Thereafter, Savage made partial payments on that debt.[33] When no further payments were made, the mortgagee commenced a judicial action to foreclose the mortgage to collect the balance due.[34] The mortgagee sought to establish "said [mortgage] lien as prior to any claim of respondents in [the] land."[35]

¶23  At issue was whether the suit on the note that led to the entry of a personal judgment against Savage affected the later foreclosure of the mortgage that secured that note.[36] If so, foreclosure of the mortgage would not have been permitted.

¶24  The court held that entry of the judgment did not extinguish the lien of the mortgage:

> [N]otwithstanding the fact that a personal judgment only was taken upon the note . . . , still the right of action upon the mortgage as a lien securing the debt remains. . . . *[N]either the entry of the judgment nor the subsequent proceedings were in any sense a bar to the right to foreclose the mortgage lien for the portion of the original debt which is unpaid.*[37]

¶25  Most recently, in *American Federal Savings & Loan v. McCaffrey*[38] the supreme court reiterated the rule of *Hanna*, citing that decision among others:

> In transactions involving both notes and mortgages, the notes represent the debts, the mortgages security for payment of the debts. Either may be the basis of an action. *The mortgagee may sue and obtain a judgment upon the notes* and enforce it by levy upon any property of the debtor. *If*

---

[32] *Id.*

[33] *Id.* at 570-71.

[34] *Id.* at 571.

[35] *Id.*

[36] *Id.* at 571-72.

[37] *Id.* (emphasis added).

[38] 107 Wn.2d 181, 189, 728 P.2d 155 (1986) (emphasis added) (citations omitted).

*the judgment is not satisfied in this manner, the mortgagee still can foreclose on the mortgaged property to collect the balance.*

¶26 Thus, Washington case law makes clear that the entry of a judgment on a promissory note secured by a real property security interest does not extinguish the lien of that security interest in the collateral. Specifically, the holder of the real property security interest has the option to sue on the note, obtain a judgment, and later foreclose the security interest to satisfy any unpaid obligation of the borrower on the note.

¶27 Here, BECU directed the successor trustee for the Burnses' deed of trust to commence a nonjudicial foreclosure proceeding due to defaults under the Burnses' note. The recording of a notice of trustee's sale on December 5, 2008, followed. But the successor trustee recorded a notice of discontinuance of this scheduled sale on February 24, 2009, terminating this nonjudicial foreclosure proceeding.

¶28 Thereafter, BECU commenced an action on the delinquent promissory note against the Burnses. On April 14, 2009, the superior court entered a default judgment for $81,986.52 in favor of BECU against the Burnses.

¶29 The above-described procedure was entirely consistent with the mortgage law principle that while simultaneous actions against one obligated on a note are not permitted,[39] successive actions are.[40] The Burnses do not contest the continued validity of this mortgage law principle.

¶30 There is no material distinction between this case and *Hanna*. Both lenders held promissory notes secured by security interests in real property. Both sued on the notes and obtained judgments. Both later claimed rights as

---

[39] RCW 61.12.120 ("The plaintiff shall not proceed to foreclose his mortgage while he is prosecuting any other action for the same debt or matter which is secured by the mortgage . . . .").

[40] *Seattle Sav. & Loan Ass'n v. Gardner J. Gwinn, Inc.*, 171 Wash. 695, 698-99, 19 P.2d 111 (1933); *Sullins v. Sullins*, 65 Wn.2d 283, 285, 396 P.2d 886 (1964).

secured creditors following entry of judgments on their respective notes. In *Hanna*, the lender exercised the right to foreclose the mortgage to collect the unpaid debt. Here, BECU asserts the lien of its deed of trust against surplus funds from the trustee's sale directed by Wells Fargo. In neither case does the entry of judgment on the note bar the lender from later enforcing available remedies to obtain payment as a holder of an enforceable security interest for the note.

¶31 The next question is whether the principles articulated for mortgages in the case law that we have just discussed apply equally to deeds of trust. We hold that they do.

¶32 BECU argues that RCW 61.24.100(2) permits it to sue on the Burnses' note, recover a judgment, and later assert its claim under the deed of trust to the surplus funds from the Wells Fargo trustee's sale to satisfy the unpaid balance. We agree.

¶33 As we previously stated, our task is to determine and implement the intent of the legislature.[41] In doing so, we look first to the statute's plain language.[42] If the statute is unambiguous, the inquiry ends.[43]

¶34 RCW 61.24.100(2) provides as follows:

(a) Nothing in this chapter precludes *an action against any person liable on the obligations secured by a deed of trust* or any guarantor prior to a notice of trustee's sale being given pursuant to this chapter or *after the discontinuance of the trustee's sale.*

(b) No action under (a) of this subsection precludes the beneficiary from commencing a judicial foreclosure or trustee's

---

[41] *J.P.*, 149 Wn.2d at 450 (citing *Nat'l Elec. Contractors Ass'n*, 138 Wn.2d at 19).

[42] *HomeStreet*, 166 Wn.2d at 451 (citing *Armendariz*, 160 Wn.2d at 110).

[43] *Bunker*, 169 Wn.2d at 582-83 (Sanders, J., dissenting) (quoting *Armendariz*, 160 Wn.2d at 110).

sale under the deed of trust **after the completion** or dismissal **of that action.**[44]

¶35 The plain language of RCW 61.24.100(2) codifies for deeds of trust the rule stated in *Hanna* and reiterated in *American Federal*. Specifically, under subsection (a), commencing an action on a promissory note that is secured by a deed of trust either before a nonjudicial foreclosure or **after the discontinuance of a trustee's sale of that deed of trust** is permissible. Moreover, under subsection (b), such an action does not preclude either a judicial or nonjudicial foreclosure of the deed of trust after the completion or dismissal of such an action.

¶36 BECU strictly followed this procedure. It directed the successor trustee for the Burnses' deed of trust to discontinue the scheduled sale. BECU then sued the Burnses on the note and recovered a judgment. The lien of its deed of trust was not extinguished by entry of judgment on the note. The provisions of RCW 61.24.100(2) that permit a suit on the note, followed by a later foreclosure of a deed of trust securing that note, would have no meaning if entry of judgment extinguished the lien of the deed of trust. Thus, under the plain words of this statute, BECU had the right to assert the rights and remedies of its deed of trust by foreclosure or otherwise.

¶37 The Burnses' arguments otherwise are unpersuasive. First, they fail to cite any authority that holds that entry of judgment on a promissory note that is secured by a deed of trust merges the deed of trust into the judgment. There is no such authority in this state.

¶38 Second, the Burnses fail to persuade us that the doctrine of merger has any application to the facts of this case. As this court stated in *Caine & Weiner v. Barker*,[45] there is little authority in Washington interpreting this doctrine. This court stated in that case:

---

[44] (Emphasis added.)

[45] 42 Wn. App. 835, 836-37, 713 P.2d 1133 (1986).

The merger rule is based in part upon the need to prevent vexatious relitigation of matters that have already passed into judgment as between the parties to the litigation and their successors. However, despite the general rule that underlying rights and obligations are extinguished by the judgment, the doctrine is designed to promote justice and should not be carried further than that end requires. Therefore, where the original obligation provides for special rights or exemptions, in some circumstances these may be preserved and recognized despite merger.[46]

As we have already explained, RCW 61.24.100 expressly permits BECU to sue on the note and later assert its rights under the deed of trust securing that note. And BECU did so here in strict compliance with the statute. Thus, there can be no valid claim in this case of "vexatious relitigation of matters" that the merger doctrine seeks to avoid.

¶39 As for promoting justice, the Burnses fail to explain in any persuasive manner why it is unjust for BECU to assert its right to payment of the delinquent debt by claiming an interest in the trustee's sale surplus funds. BECU has such a right under the provisions of RCW 61.24.100(2). We see no injustice here.

¶40 The Burnses also argue that "[i]t is a well-established principle in Washington State that a suit on [a] promissory note waives the underlying security."[47] As we explained earlier in this opinion, that is not the law. *Hanna*, *American Federal*, and RCW 61.24.100(2) directly contradict this contention. All establish that one may first sue on a note and later enforce rights and remedies under the security instrument securing that note.[48]

---

[46] *Id.* at 837 (citations omitted).

[47] Brief of Respondent(s) at 10.

[48] *See Hanna*, 26 Wash. at 571-72; *Am. Fed.*, 107 Wn.2d at 189; RCW 61.24.100(2).

¶41 The Burnses cite two cases to support their waiver argument: *Bradley Engineering & Machinery Co. v. Muzzy*[49] and *Sullins v. Sullins*.[50] Neither case supports their argument.

¶42 The Burnses' only citation to *Bradley* is the following out-of-context quotation:

> "The commencement of an action for the recovery of a debt secured by mortgage not asking a foreclosure of the mortgage and brought before a foreclosure of the mortgage and sale thereunder, shall be, and be deemed to be, a waiver of the mortgage security; and this provision may not be waived or avoided by agreement contained in the mortgage or otherwise."[51]

The above statement is a part of an 1899 statute regarding foreclosure of mortgages. That waiver language no longer exists in the foreclosure statutes of Washington. Thus, the quotation in the old opinion for a statute that no longer exists has no relevance to this case.

¶43 More importantly, the *Bradley* court neither cites *Hanna* nor otherwise indicates any retreat from the legal principles stated in that case. For both of these reasons, *Bradley* is not persuasive.

¶44 The Burnses' reliance on *Sullins* is also unpersuasive. In that case, the supreme court stated:

> We have held that a lien is an encumbrance upon the property as security for the payment of a debt.
>
> The waiver of the lien does not extinguish the debt. He may elect to abandon the security and sue upon the debt alone.[52]

¶45 There is no dispute that a secured creditor may elect to abandon its security and sue on the note alone, as the *Sullins* court noted. But this record shows no evidence of such an election. Rather, as *Hanna, American Federal*, and

---

[49] 54 Wash. 227, 103 P. 37 (1909).

[50] 65 Wn.2d 283, 396 P.2d 886 (1964).

[51] 54 Wash. at 231 (quoting Laws of 1899, ch. LIII, § 2).

[52] *Sullins*, 65 Wn.2d at 285 (citations omitted).

RCW 61.24.100(2) expressly permit, BECU sued on the note, maintaining its ability to later assert its rights under the Burnses' deed of trust.

¶46 We also note that among the cases that the *Sullins* court cited to support its holding was *Seattle Savings & Loan Ass'n v. Gardner J. Gwinn Inc.*[53] In that case, the supreme court stated:

> In cases of notes and mortgages, the notes represent the debts, the mortgages security for the payment of the debts. Either may be the basis of an action; and, while [Washington law] provides against the maintenance of concurrent actions, we have held that a judgment on notes secured by a mortgage would not constitute such a judgment *res adjudicata* in a subsequent action for the foreclosure of the mortgage lien, for the purpose of recovering that portion of the debt which remained unpaid under the personal judgment.

This statement is entirely consistent with the rule stated in *Hanna, American Federal*, and RCW 61.24.100(2). It further undermines Burnses' argument.

¶47 The Burnses also argue that a judgment on the promissory note extinguishes the underlying note. But that is not the dispositive question. Rather, the question is whether a judgment on the note extinguishes the deed of trust securing the note.

¶48 The Burnses fail to cite any relevant authority holding that a deed of trust itself, which is a separate obligation from the note, is extinguished by a judgment on the note secured by that deed of trust. They do cite to *Petri v. Manny*,[54] but this case is inapplicable to their argument. There, the supreme court stated that " '[w]hen a judgment is obtained on a note or bill, the bill or note is thereby

---

[53] 171 Wash. 695, 698-99, 19 P.2d 111 (1933) (citation omitted).

[54] 99 Wash. 601, 170 P. 127 (1918).

extinguished and merged in the judgment.' "[55] Thus, a second action cannot be brought by the same plaintiff on the note.[56] Nothing in the case addresses the question whether security for a note is extinguished by a judgment on the note.

¶49 Likewise, *Woodcraft Construction, Inc. v. Hamilton*,[57] the other case upon which the Burnses rely, does not address this question. In *Woodcraft*, the note contained a provision for attorney fees. The court held that when the judgment on the promissory note was entered, the attorney fee provision "merged into the judgment and ceased to exist."[58] Nothing in the case addresses security for a note.

¶50 The Burnses argue that RCW 61.24.100(2), which we previously discussed in this opinion, does not apply to lienholders who do not foreclose.[59] They rely solely on language in *Beal Bank, SSB v. Sarich*[60] but quote the case without context and reach an incorrect conclusion as to its holding.

¶51 In *Beal Bank*, the holder of the first deed of trust on certain property directed a nonjudicial foreclosure of a deed of trust.[61] At the time of the trustee's sale for that deed of trust, Beal was the holder of two promissory notes, each of which was secured by separate deeds of trust on the same property.[62] Both deeds of trust were subordinate to that for which the trustee's sale was conducted.[63]

---

[55] *Id.* at 605 (quoting JAMES W. EATON & FRANK B. GILBERT, A TREATISE ON COMMERCIAL PAPER § 122(f) at 543 (1903)).

[56] *Id.*

[57] 56 Wn. App. 885, 786 P.2d 307 (1990).

[58] *Id.* at 888.

[59] Brief of Respondent(s) at 13-14.

[60] 161 Wn.2d 544, 548, 167 P.3d 555 (2007).

[61] *Id.* at 546.

[62] *Id.* at 546-47.

[63] *Id.*

¶52 Prior to the trustee's sale, Beal had commenced an action on the two notes against the borrowers.[64] It did not seek to foreclose its two deeds of trust as part of that action.[65]

¶53 Following the trustee's sale for the first deed of trust, Beal moved for summary judgment on the notes against the delinquent borrowers.[66] The court denied the motion.[67] The borrowers then moved for summary judgment, claiming the trustee's sale barred the suit on the notes.[68] The trial court granted this motion.[69]

¶54 On appeal, the supreme court stated that the issue was whether the nonjudicial foreclosure by the senior deed of trust precluded Beal from pursuing its action on the notes.[70] The court held that the nonjudicial foreclosure eliminated the junior lien.[71] But the proceeding did not affect the action on the notes.[72] Accordingly, the supreme court reversed the trial court's grant of summary judgment to the obligors on the note.[73]

¶55 The Burnses cite the following language from *Beal Bank* to support their argument: "We turn to the plain language of the relevant portion of RCW 61.24.100 and find the right of nonforeclosing junior lienholders and creditors is simply not implicated."[74]

---

[64] *Id.*

[65] *Id.* at 546.

[66] *Id.* at 547.

[67] *Id.*

[68] *Id.*

[69] *Id.*

[70] *Id.*

[71] *Id.* at 550.

[72] *Id.*

[73] *Id.*

[74] *Id.* at 548.

■ ■ ¶56 The Burnses quote this language out of context. RCW 61.24.100, as we already explained, expressly authorizes the holder of a note that is secured by a deed of trust to sue on the note without affecting the lien of the deed of trust securing that note. This statute is entirely consistent with *Beal Bank*'s holding: foreclosure by a senior lienholder eliminates the security of a junior lienholder, not the note held by the junior.[75] We reject the Burnses' attempt to read the case to support their argument. It does not.

¶57 At oral argument, the Burnses claimed that permitting BECU to enforce its right to claim a portion of the surplus funds after entry of judgment on the note violates the antideficiency provisions of the Deeds of Trust Act. They are wrong.

¶58 A deficiency judgment arises if the amount of a judgment in a judicial foreclosure exceeds the value of the security at the foreclosure sale.[76]

¶59 RCW 61.24.100(1) states:

> Except to the extent permitted in this section for deeds of trust securing commercial loans, a deficiency judgment shall not be obtained on the obligations secured by a deed of trust against any borrower, grantor, or guarantor after a trustee's sale under ***that*** deed of trust.[77]

But the plain language of RCW 61.24.100(1) prohibits such a judgment where there is "a trustee's sale under ***that*** deed of trust." The relevant deed of trust for purposes of this provision is that securing the obligation at issue.

¶60 Here, there was never a trustee's sale under the deed of trust securing the note to BECU. The only trustee's

---

[75] *Id.* at 549-50.

[76] *See id.* at 552 (Sanders, J, concurring). "If a foreclosure sale satisfies the entire debt, there is no deficiency. However when this is not the case, a lender may sue for a deficiency."

[77] (Emphasis added.)

sale was that directed by Wells Fargo under its deed of trust. Moreover, there will never be a trustee's sale under the BECU deed of trust. That is because the trustee's sale directed by Wells Fargo eliminated the lien of the BECU deed of trust against the real property sold. The lien of the BECU deed of trust attached by operation of law to the surplus funds from the Wells Fargo trustee's sale. In sum, there has not been and never will be any violation of the "antideficiency" provisions of RCW 61.24.100(1) on which the Burnses rely to avoid BECU's claim to the surplus funds.

*Homestead Exemption Unavailable Against Debt Secured by Deed of Trust*

¶61 BECU argues that the Burnses' homestead exemption is ineffective to avoid its claim to surplus funds of the trustee's sale since the deed of trust was not extinguished. We agree.

¶62 RCW 61.24.080(3) provides in relevant part that surplus funds from a trustee's sale shall be deposited into the court's registry and that

[i]nterests in, or liens or claims of liens against the property eliminated by sale under this section shall attach to the surplus in the order of priority that it had attached to the property.

¶63 Here, there is no dispute that the BECU deed of trust against the Burnses' residence was eliminated by the trustee's sale directed by Wells Fargo. Likewise, BECU has a first priority lien against those surplus funds.

¶64 The remaining question is whether the Burnses' homestead exemption right is effective against the BECU deed of trust. We hold that it is not.

¶65 RCW 6.13.080 states that

[t]he homestead exemption is not available against . . .

. . . .

(2) . . . *debts secured* . . . (b) by mortgages or *deeds of trust on the premises* that have been executed and acknowledged

by both spouses or both domestic partners or by any claimant not married or in a state registered domestic partnership.

¶66 Here, the Burnses' homestead is not available against the BECU deed of trust, as the plain words of this statute make clear. This result is consistent with the result in *Upton*.[78]

¶67 We reverse the order disbursing funds and remand for further proceedings that are consistent with this opinion.

BECKER and APPELWICK, JJ., concur.

Review denied at 175 Wn.2d 1008 (2012).

---

[78] *In re Tr.'s Sale of Real Prop. of Upton*, 102 Wn. App. 220, 6 P.3d 1231 (2000) (where there are excess proceeds from a foreclosure sale, the homestead exemption is not available against debts secured by a second deed of trust).