
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

THE BANK OF NEW YORK MELLON,
aka THE BANK OF NEW YORK, as
successor in interest to JP MORGAN
CHASE BANK, NA as Trustee for
STRUCTURED ASSET MORTGAGE
INVESTMENTS II, INC. BEAR STERNS
ALT-A TRUST 2005-9, MORTGAGE
PASS-THROUGH CERTIFICATES,
SERIES 2005-9,

               Appellants,

      v.

SCOTTY'S GENERAL CONSTRUCTION,
INC., a Washington corporation,

               Respondent.

No. 67370-0-I

DIVISION ONE

UNPUBLISHED

FILED: <u>June 3, 2013</u>

    Cox, J. — Bank of New York Mellon (BNY Mellon) appeals the grant of the CR 12(b)(6) dismissal motion of Scotty's General Construction, Inc. It appears beyond doubt that BNY Mellon did not prove below any set of facts that would justify granting relief. Accordingly, we hold that dismissal was proper.

    Generally, an appellate court will not consider issues raised for the first time on appeal.[1] Even in the context of a CR 12(b)(6) motion, a litigant may not raise a legal issue for the first time on appeal when it has failed to do so in the

---

[1] RAP 2.5(a).

lower court.[2] We conclude from a fair reading of this record that BNY Mellon failed to preserve below the arguments that it makes for the first time on appeal. Accordingly, we do not reach those arguments.

We affirm.

The material facts are undisputed. In 2005, Gloria Pazooki obtained a loan from Centralbanc Mortgage Corp. for $352,000. The loan was evidenced by a promissory note that was secured by a deed of trust. The deed of trust was recorded on June 7, 2005.

In 2007, Gloria Pazooki and her husband contracted with Scotty's for renovation and construction work on the property that was then subject to Centralbanc's prior recorded deed of trust. Scotty's commenced work on this property in May 2007. The Pazookis failed to pay the contract balance owed to Scotty's.

Based on the failure to pay, Scotty's timely recorded its mechanics and materialmen's lien and timely commenced its lien foreclosure action against the property. The complaint named Centralbanc, the then owner and holder of the

---

[2] Id.; see Karlberg v. Otten, 167 Wn. App. 522, 531-32, 280 P.3d 1123 (2012) ("A failure to preserve a claim of error by presenting it first to the trial court generally means the issue is waived. While an appellate court retains the discretion to consider an issue raised for the first time on appeal, such discretion is rarely exercised." (citing Bellevue Sch. Dist. No. 405 v. Lee, 70 Wn.2d 947, 950, 425 P.2d 902 (1967)); see also Smith v. Shannon, 100 Wn.2d 26, 38, 666 P.2d 351 (1983) ("Failure to make such a motion when it would enable the trial court to correct its error precludes raising the error on appeal, unless the error was pointed out at some other point during the proceedings."); see also Sofamor Danek Group, Inc. v. Brown, 124 F.3d 1179, 1186 (9th Cir. 1997) ("Before an argument will be considered on appeal, 'the argument must be raised sufficiently for the trial court to rule on it . . . .'" (quoting Broad v. Sealaska Corp., 85 F.3d 422, 430 (9th Cir. 1996))).

2

June 2005 note and deed of trust, and other defendants on the basis that they claimed interests in the same property.

An officer of Centralbanc executed a declaration dated July 19, 2010 that Scotty's appears to have used in the foreclosure action. The declaration stated:

. . . .

> 3. I have reviewed the pleadings and understand that the only request which Scotty's General Construction, Inc. is making for leave against CentralBanc Mortgage Corporation is for adjudication of superiority of Scotty's General Construction, Inc.'s lien over CentralBanc Mortgage Corporation.

> 4. Because CentralBanc Mortgage Corporation no longer has any interest in the property at issue, CentralBanc Mortgage Corporation does not intend to appear at trial and has no objection to Scotty's General Construction, Inc.'s request for leave.[3]

In August 2010, the trial court entered judgment for Scotty's in the foreclosure action. The judgment provided, in part:

> ORDERED, DECREED, and ADJUDGED that Scotty's General Construction, Inc. shall be entitled to foreclosure of its lien as against the subject property *and as against the interest of each of the Defendants*, and as against any right, title and interest acquired by and person subsequent to May 7, 2007, by sale and in the manner prescribed by law, and with application of the proceeds thereof to the payment of such lien, interest, attorney's fees and costs.[4]

In February 2011, BNY Mellon, claiming a successor interest in Centralbanc's original deed of trust, commenced this declaratory judgment action. It sought a declaration that its claimed interest in the June 2005 Centralbanc deed of trust, was superior in priority to Scotty's' May 2007

---

[3] Clerk's Papers at 344-45.
[4] Id. at 155 (emphasis added).

3

mechanics and materialmen's lien. Accordingly, it sought to quiet title in the property on the basis of that claimed interest.

Scotty's moved to dismiss based on CR 12(b)(6) for failure to state a claim. The trial court granted the motion.

BNY Mellon appeals.

## BNY MELLON'S PRESERVED CLAIMS

The proper starting point for our review of the trial court's decision is to focus on the arguments that were before it. Accordingly, we focus first on the arguments that BNY Mellon properly preserved.

An appellate court reviews de novo both a summary judgment order and the propriety of a trial court's dismissal of an action under CR 12(b)(6).[5] In reviewing a summary judgment order, this court views the facts and reasonable inferences in the light most favorable to the nonmoving party.[6] In reviewing the propriety of a trial court's dismissal of an action under CR 12(b)(6), "dismissal is appropriate only if 'it appears beyond doubt that the plaintiff cannot prove any set of facts which would justify recovery.' In undertaking such an analysis, 'a plaintiff's allegations are presumed to be true and a court may consider hypothetical facts not included in the record.'"[7]

---

[5] Lam v. Global Med. Sys., Inc., 127 Wn. App. 657, 661 n.4, 111 P.3d 1258 (2005); Dave Robbins Constr. v. First American Title Co., 158 Wn. App. 895, 899, 249 P.3d 625 (2010).

[6] Lam, 127 Wn. App. at 661 n.4.

[7] Burton v. Lehman, 153 Wn.2d 416, 422, 103 P.3d 1230 (2005) (quoting Tenore v. AT & T Wireless Servs., 136 Wn.2d 322, 329-30, 962 P.2d 104 (1998); W. Telepage , Inc. v. City of Tacoma Dep't of Fin., 140 Wn.2d 599, 607, 998 P.2d 884 (2000)).

The record on appeal shows that most of BNY Mellon's arguments below in response to the motion to dismiss by Scotty's were based not on its own status, but on the status of the Mortgage Electronic Recording System (MERS), which was listed as the beneficiary in the original deed of trust. First, BNY Mellon argued that MERS had a beneficial interest in the property and should have been joined as a defendant in the foreclosure action.[8] Second, BNY Mellon argued that Centralbanc's disclaimer in its July 19, 2010 declaration in the foreclosure action by Scotty's did not eliminate the "right [of MERS] to be joined" to the foreclosure action.[9]

BNY Mellon's final argument was that the Centralbanc deed of trust, which was recorded in June 2005, had priority of record over Scotty's' mechanics and materialmen's lien, which was first effective in May 2007.[10] BNY Mellon cited RCW 60.04.061 to support this argument.

The first two of these legal arguments, which are based on the status of MERS, do not help BNY Mellon. Before discussing why, we conclude that it is necessary to clarify the proper applicable terms for this case, given BNY Mellon's persistent use of the term "mortgage" in its briefing.

The June 2005 real property security instrument utilized in this case to secure payment of the $352,000 promissory note that Pazooki executed and delivered to Centralbanc is a deed of trust. A deed of trust contains a power of sale, which is utilized in the event of a default. The parties to a deed of trust have traditionally included the grantor (borrower), the beneficiary (the lender),

---

[8] Clerk's Papers at 298-303.
[9] Id. at 303.
[10] Id. at 306.

5

and the trustee (the entity to whom the grantor conveys the power of sale by executing the deed of trust). Here, though MERS is not the lender, it was named as the beneficiary in the deed of trust that Pazooki executed and delivered to Centralbanc.

In contrast to a deed of trust, the parties to a mortgage are the mortgagor (borrower) and the mortgagee (lender). There is no power of sale in a mortgage. Here, the Centralbanc deed of trust makes no mention of mortgages and the parties to the instrument are not called either mortgagor or mortgagee.

The law of mortgages generally applies to deeds of trust, but there are exceptions.[11] For purposes of this case, we need not discuss any more of these exceptions other than those we have already discussed in this opinion. For purposes of clarity and precision, however, we refer to the Centralbanc real property security instrument in this case as a deed of trust, not a mortgage.

As BNY Mellon correctly argues, Centralbanc was the original owner and holder of the note and deed of trust, as the "Lender" for the loan to Pazooki, the "Borrower."[12] It is undisputed that Centralbanc was still the owner and holder of the note and deed of trust at the time Scotty's commenced the foreclosure action in 2009. Finally, it is undisputed that Scotty's joined Centralbanc, the then owner and holder of the June 2005 deed of trust, as a defendant when commencing the foreclosure action. Thus, to the extent that Scotty's sought to obtain an adjudication of the priority of its May 2007 mechanics and materialmen's lien

---

[11] Boeing Employees' Credit Union v. Burns, 167 Wn. App. 265, 272, 272 P.3d 908 (2012).
[12] Clerk's Papers at 5-6.

over the prior recorded lien of the Centralbanc deed of trust in that foreclosure action, it joined the necessary party—Centralbanc.

Whether the trial court's final adjudication of priorities between these two interests in the realty, overturning the record priority of Centralbanc's deed of trust over Scotty's lien, was correct is a separate question.

Ignoring these obvious points, BNY Mellon argued below that MERS was also a necessary party to the foreclosure action. This argument is unpersuasive.

BNY Mellon's argument below was primarily premised on the assumption that MERS is a proper beneficiary under the Centralbanc deed of trust. That is not the law, as made clear in Bain v. Metropolitan Mortgage Group, Inc.[13]

There, MERS appointed successor trustees to those originally designated in deeds of trust to conduct foreclosure proceedings against property securing allegedly delinquent debts.[14] MERS maintains a private electronic registration system for tracking ownership of debt secured by deeds of trust.[15] The grantors (borrowers) under the respective deeds of trust in foreclosure commenced an action against MERS and others in the Federal District Court for the Western District of Washington to obtain relief from the foreclosures.[16] That court certified three questions regarding Washington's Deeds of Trust Act to our state supreme court.[17]

In answering the first of these questions, the supreme court held that MERS is not a lawful beneficiary under Washington's Deeds of Trust Act

---

[13] 175 Wn.2d 83, 285 P.3d 34 (2012).
[14] Id. at 90.
[15] Id. at 88.
[16] Id. at 90.
[17] Id. at 90-91.

7

because it never holds the promissory notes that are secured by the deeds of trust.[18] Under the Deeds of Trust Act, a beneficiary is defined as "the holder of the instrument or document evidencing the obligations secured by the deed of trust, excluding persons holding the same as security for a different obligation."[19] Thus, the plain language of the act bars MERS from fulfilling the statutory requirements of a beneficiary.[20] The supreme court concluded that none of the arguments that MERS made altered the fact that it never held the note or other security instrument that secured the deed of trust.[21] Thus, MERS does not meet the statutory definition of a beneficiary.[22]

Here, the Bain holding undercuts the argument that BNY Mellon made below. BNY Mellon's first argument below was legally incorrect: MERS is *not* a proper beneficiary under the Centralbanc deed of trust. This is so, notwithstanding the fact that the Centralbanc deed of trust in this case named MERS as "Beneficiary."[23]

BNY Mellon also argued below that joinder of MERS was required under RCW 60.04.171. We disagree.

RCW 60.04.171, the mechanics and materialmen's lien statute, provides as follows:

> In any action brought to foreclose a lien, the owner shall be joined
> as a party. The interest in the real property of any person who,
> prior to the commencement of the action, has a recorded interest in

---

[18] Id. at 110.
[19] RCW 61.24.005(2).
[20] Bain, 175 Wn.2d at 110.
[21] Id.
[22] Id.
[23] Clerk's Papers at 6.

8

the property, or any part thereof, ***shall not be foreclosed or affected unless they are joined as a party***.[24]

The plain words of this statute show that joinder of any "person" with a "recorded interest in the property" prior to commencement of a foreclosure action is not required. But failure to join such a person to the foreclosure action leaves their interest in the property unaffected by the foreclosure.

Thus, "[i]f the unjoined person's interest has priority over that of a party in the action, this interest is not extinguished or adversely affected, because it could not have been if the person had actually been joined."[25] This view is consistent with MB Construction Company v. O'Brien Commerce Center Associates.[26] There, this court held that the trial court's dismissal of a construction lien foreclosure action for failure to join the mortgagee was improper.[27] It noted that "the mortgagee's interest cannot be affected by a lien foreclosure unless the foreclosing party joins the mortgagee as a party to the foreclosure action."[28]

Here, the failure to join MERS would not have affected any claimed interest it could claim to have had in the real property. We note that there was no argument below that MERS had some interest separate and apart from Centralbanc, the then owner and holder of the note and deed of trust, that required MERS to be separately named in the foreclosure. Thus, there is no other reason that was presented to the trial court to support the claim that MERS was a necessary party to the foreclosure action.

---

[24] RCW 60.04.171 (emphasis added).
[25] WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS §11.8 (2d ed. 2004).
[26] 63 Wn. App. 151, 816 P.2d 1274 (1991).
[27] Id. at 158-59.
[28] Id. at 158.

In sum, joinder of MERS was not mandated by this statute, contrary to BNY Mellon's argument.

BNY Mellon's second argument below fares no better on appeal. It contended that Centralbanc's July 19, 2010 disclaimer of an interest in the foreclosure action did not eliminate the "right [of MERS] to be joined" to that action.

Again, this argument is primarily based on some claimed right of MERS, not BNY Mellon. But, as we just discussed, MERS had no right to be joined in the foreclosure action. Thus, the Centralbanc disclaimer is immaterial to any "right" of MERS.

BNY Mellon made a passing reference below to Centralbanc's declaration, which was signed 20 days after its alleged assignment of the Centralbanc deed of trust to BNY Mellon. But BNY Mellon did not develop in the briefing below what significance, if any, this assertion had on its rights. We address later in this opinion the significance of this omission.

We next address BNY Mellon's final argument. It claimed that it is entitled to priority based on the recording of the Centralbanc deed of trust almost two years before Scotty's commenced work on the Pazooki property. The briefing below says little about this. But the parties addressed this issue more fully during oral argument of the motion to dismiss.

At that time, Scotty's argued that there were three questions before the court, anyone of which required dismissal of the complaint. One of those questions was whether MERS had any interest in the promissory note signed by Pazooki to assign to BNY Mellon. Scotty's argued that if the answer to that

question was "no," the purported assignment of the Centralbanc deed of trust to BNY Mellon was a nullity under Washington law.

The essence of Scotty's argument was that the Deeds of Trust Act treats a deed of trust as following the promissory note that it secures. Where, as here, there was no evidence that MERS ever held the Pazooki note, MERS could not have acquired and then assigned any interest in the deed of trust by MERS to BNY Mellon. The court and counsel spent considerable time discussing these points. And it appears from the court's questions during oral argument and its later grant of the motion that it agreed with Scotty's' argument.

Tracing the history of the terms in the Deeds of Trust Act, the supreme court decided in Bain that the act "contemplates that the [deed of trust] will follow the note, not the other way around. MERS is not a 'holder' [of the note] under the plain language of the [act]."[29] Thus, the question here is whether this record shows that MERS was the holder of the Pazooki promissory note. If not, it could not assign to BNY Mellon either the note or the deed of trust securing that note.

The sole evidence in this record that has been brought to our attention addressing this issue is the Assignment of Deed of Trust dated June 17, 2010.[30] By its terms, MERS purports "as Beneficiary," to assign to BNY Mellon its "beneficial interest" in the Centralbanc deed of trust.[31] This document further purports to assign the promissory note secured by that deed of trust.[32]

---

[29] Bain, 175 Wn.2d at 104.
[30] Clerk's Papers at 30.
[31] Id.
[32] Id.

During oral argument below, the court and counsel focused on this document. BNY Mellon properly conceded then that it did not assert that MERS ever held the Centralbanc promissory note. And, as the trial court correctly pointed out, there was no evidence showing that Centralbanc ever assigned the note to MERS. As Bain held, without such a showing, and without evidence that MERS is an agent for the holder of the note, there is no evidence to show that MERS had the authority to assign the deed of trust to BNY Mellon.[33]

In sum, the record priority of the Centralbanc deed of trust, which was recorded in June 2005, over the May 2007 mechanics and materialmen's lien does not benefit BNY Mellon. That is because this record does not show any assignment of the Centralbanc note to BNY Mellon. Without such a showing, BNY Mellon fails to demonstrate it is a valid assignee of the Centralbanc deed of trust.

We reach this conclusion, notwithstanding the language of the Assignment of Deed of Trust dated June 17, 2010, that incorrectly states otherwise. It would be a triumph of form over substance to blindly accept this written representation where this record fails to support that assertion.

To summarize, all arguments that BNY Mellon made below fail. The trial court properly rejected them in granting the motion to dismiss.

### BNY MELLON'S WAIVED CLAIMS

We next address the arguments BNY Mellon makes for the first time on appeal. Scotty's asserts that they were not properly preserved below. We agree.

---

[33] Bain, 175 Wn.2d at 110, 112.

Generally, an appellate court does not consider issues raised for the first time on appeal unless they involve manifest error affecting a constitutional right.[34] In the context of a CR 12(b)(6) motion, an appellate court may consider any hypothetical factual scenario that supports the plaintiff's claim, even if asserted for the first time on appeal.[35] But even in the context of a CR 12(b)(6) motion, a litigant may not raise a legal issue for the first time on appeal when it failed to do so in the lower court.[36]

*MERS Arguments Raised for the First Time on Appeal*

BNY Mellon makes several arguments regarding MERS that are made for the first time on appeal. They directly contradict its arguments below. One of these arguments is that the "beneficiary status of MERS is a red herring."[37] To support this proposition, BNY Mellon argues that "MERS' function in this case was merely as a mechanism to notify the holder of the loan/note/mortgage and would have facilitated Scotty's to satisfy the due process of reasonable notice . . . ."[38] This argument contradicts BNY Mellon's argument below, that MERS held a beneficial interest in the note. We have already discussed this argument in a prior portion of this opinion.

Similarly, BNY Mellon's statement that "[w]hen MERS transferred its rights through signing the assignment instrument, [it] divested any rights it had to

---

[34] RAP 2.5(a).
[35] Bravo v. Dolsen Cos., 125 Wn.2d 745, 750, 888 P.2d 147 (1995).
[36] RAP 2.5(a); Sofamar Danek Group, Inc., 124 F.3d at 1186 n.4 (9th Cir. 1997) (quoting Broad, 85 F.3d at 430 (9th Cir. 1996)).
[37] Brief of Appellant at 34-35.
[38] Id. at 35.

13

enforce the mortgage" contradicts its arguments made below as to MERS's rights. We need not address these arguments any further.[39]

Finally, BNY Mellon argues for the first time in its reply brief on appeal that it deserves a "day in court to prove that MERS was its agent."[40] Because this argument was first raised in reply, we need not address it.[41]

At oral argument before this court, BNY Mellon claimed it did preserve below arguments now made on appeal. BNY Mellon invited our attention to two specific places in the record to support this claim: Clerk's Papers at 203-244 and Clerk's Papers at 301-302.

The first reference is to Testimony of R.K. Arnold, President and CEO of MERSCORP, Inc. before the Subcommittee on Housing and Community Opportunity of the House Financial Services Committee. The last is to pages in BNY Mellon's response to Scotty's' motion to dismiss in the trial court.

Neither reference establishes that BNY Mellon properly preserved below arguments beyond the scope of the specific arguments that we discussed earlier in this opinion. The Testimony of Arnold discusses how MERS functions, but it does little to advance the preservation argument made in this case. Nor do the references to this testimony in the legal arguments in response to Scotty's' motion to dismiss demonstrate that the issues now argued on appeal were squarely presented to the trial court.

---

[39] Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).
[40] Supplemental Brief of Appellant at 13; see also Reply Brief of Appellant at 4 ("[N]either BNY Mellon nor its agent (MERS) was joined in the prior suit.").
[41] See Cowiche Canyon, 118 Wn.2d at 809; see RAP 10.3(c).

*Arguments Made as to Scotty's' Failure to Join BNY Mellon*

BNY Mellon also makes several arguments on appeal about the effect on the foreclosure action of Scotty's' failure to join *it*. In its brief, BNY Mellon argues that it has a priority lien on the property in question, and that Scotty's' judgment is void due to lack of adequate notice, misrepresentation regarding joinder, and mandatory pleadings. Finally, BNY Mellon argued in its brief that Scotty's' failure to join it in the foreclosure action was a violation of its due process rights.

None of these arguments were made below. And there is no persuasive argument made on appeal that these arguments fall within the narrow exceptions that permit us to reach arguments not properly preserved below. Thus, we do not address these new arguments.[42]

## APPENDICES

Scotty's argues that this court should disregard the appendices included in BNY Mellon's opening brief for failure to conform to RAP 10.3(a)(8). We consider them to the extent they were before the trial court and otherwise disregard them.

The documents included in BNY Mellon's appendices are either part of the record, as permitted by RAP 10.3(a)(8) or come within the exception in RAP 10.4(c) for statutes, regulations, instructions, exhibits, "or the like."

## ATTORNEY FEES AND COSTS

BNY Mellon argues that it is entitled to attorney fees. Scotty's does not seek fees, but it asks for costs under RAP 14.2. We deny fees to BNY Mellon

---

[42] See RAP 2.5(a); see also State v. McFarland, 127 Wn.2d 322, 332-33, 899 P.2d 1251 (1995) ("As a general rule, appellate courts will not consider issues raised for the first time on appeal.").

15

because it is not entitled to such an award. We grant Scotty's' request for costs, subject to its compliance with RAP 14.2.

RCW 4.84.330 permits a party to recover attorney fees in any action on a contract where the contract provides for an award of fees to one of the parties. BNY Mellon's claim to fees here is based on language in the Centralbanc deed of trust. Scotty's did not sign that deed of trust. Because Scotty's is not a party to the deed of trust, there is no basis for an award of fees with BNY Mellon based on this deed of trust.

Scotty's requests for costs on appeal is proper. RAP 14.2 stands as authority for such an award. Because Scotty's substantially prevails in this appeal, it is entitled to cost, subject to its compliance with the RAPs.

We affirm the order of dismissal and award costs to Scotty's, subject to its compliance with the governing RAPs. We deny BNY Mellon's request for an award of fees.

_Cox, J._

WE CONCUR:

_Leach, C.J._                    _Dwyer, J._