IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MATTHEW L. MASSEY and | ) | No. 35395-8-III |
| JACOB R. MASSEY, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| HOWARD M. NEILL, SUCCESSOR | ) | |
| TRUSTEE, STANIA NICKA | ) | |
| LOCKEMAN, Beneficiary and CHRIS | ) | |
| DANIEL BOYD, Beneficiary, | ) | |
| | ) | |
| Respondents. | ) | |

LAWRENCE-BERREY, C.J. — Matthew Massey and Jacob Massey appeal the trial

court's order denying their motion to restrain the trustee's nonjudicial foreclosure sales of

property they purchased from Chris Boyd.

They argue the trial court erred because (1) the property was purchased primarily

for agricultural purposes and hence could not be foreclosed nonjudicially, (2) the court

improperly characterized its initial order continuing the foreclosure sale as a restraining

order, (3) protections of the "Deeds of Trust Act" (DTA), chapter 61.24 RCW, cannot be

contractually waived, and (4) they had not defaulted on any obligation to Boyd.

We conclude (1) nonjudicial foreclosure was appropriate, (2) the nature of the initial continuance order is unimportant, (3) because nonjudicial foreclosure was appropriate, the Masseys did not waive any rights under the DTA, and (4) the Masseys defaulted on their obligation to Boyd.

We affirm the decision of the trial court.

FACTS

In May 2014, the Masseys began to look for a property they could use as a cannabis farm. In June, the Masseys met with Chris Boyd and Bob Homer. The Masseys said they were looking for property for a cannabis operation and a financier. Boyd expressed interest, and he and the Masseys continued their discussions. Eventually, Boyd agreed to sell property he owned at 3631 Airport Road (the property). Boyd's mother, Stania Lockeman, agreed to be the financier for the cannabis operation.

On July 21, 2014, the parties executed two sets of documents. The first set was a promissory note and deed of trust relating to the purchase and sale of the property. Per the terms of the note, the $150,000 principal plus interest of 200 percent per annum[1] was

---

[1] There is evidence that Boyd treated this as a typo. Boyd's calculation to cure the later default shows he calculated interest at 20 percent per annum rather than 200 percent.

payable in full by August 1, 2019.  The second set was a promissory note and deed of trust to secure repayment of $105,000 in financing, in addition to future financing, provided by Lockeman.  Per the terms of the note, principal plus interest of 15 percent per annum was payable in full by July 22, 2016.

Both deeds of trust contained statements that the property being conveyed was not principally used for agricultural purposes.

The Lockeman deed of trust was recorded prior to the Boyd deed of trust.  This resulted in Lockeman having the senior security interest, and Boyd having the junior security interest.

The Masseys hired a contractor to begin constructing improvements on the property for their cannabis operation.  By July 2015, substantial improvements had been made to the property.  The improvements included a partially completed pole building, an ecology block foundation, a well, and a septic system.

In July, the Masseys contacted Lockeman and asked for additional funds for the project.  Lockeman agreed to provide two more loans, one for $109,000, and another for over $150,000.  She confirmed this agreement in an e-mail to an agent for the Washington State Liquor and Cannabis Board.

Despite her agreement, she did not make the additional loans.

This required the Masseys to obtain alternative private financing. In October 2015, they obtained a new source of funds. Throughout 2016 and early 2017, the Masseys completed various other improvements with this new source of funds. In March 2017, Matthew Massey[2] obtained additional financing for startup costs, such as personnel and plant nutrients.

On January 17, 2017, both Lockeman and Boyd provided a written notice of default to the Masseys. On February 21, 2017, both Lockeman and Boyd mailed to the Masseys and recorded a notice of trustee's sale. Boyd set a trustee's sale date of May 26, 2017, and Lockeman set a trustee's sale date of June 2, 2017.

In May 2017, Matthew Massey secured further funding and offered to fully pay Lockeman's note with interest and $100,000 to Boyd. The offer required Boyd to subordinate his deed of trust to the new lender. Boyd refused.

On May 25, 2017, the Masseys filed a complaint to restrain the trustee's sale. They also filed a motion to be heard the following day entitled, "Motion for Order to Restrain Trustee's Sale." Clerk's Papers (CP) at 44. In an accompanying declaration in support of the motion, the Masseys' attorney explained his inability to serve opposing counsel, that a statute required five days' written notice to the trustee before a sale could be restrained,

---

[2] Around this time, Jacob Massey decided to no longer be involved in the venture.

4

that the trustee's sales were scheduled for May 26 and June 2, and he asked the court to

"continue the sales until after the hearing on June 13th." CP at 46. The attorney for Boyd

and Lockeman was out of town and his office would not accept service of the pleadings.

On May 26, the Masseys' attorney appeared ex parte and argued his clients'

motion. The trial court noted that it had received the pleadings the day before and had

reviewed them. The Masseys' attorney explained his attempts to give notice to opposing

counsel. The trial court said it would grant the request to temporarily restrain the

trustee's sales. The trial court commented, "You prepare an order to that effect, and there

will be a temporary restraining order to restrain the deed of trust foreclosure sales . . .

until further order of the Court." Report of Proceedings (RP) at 4. Counsel prepared the

order and presented it later that day. The order, entitled "Order Continuing Trustee's

Sales," continued the sales until after the June 13 hearing on the merits. CP at 48.

The parties presented their arguments at the June 13 hearing. The trial court

denied the Masseys' motion to restrain the trustee's sales. The court reasoned, "it is

abundantly clear there are no procedural or substantive defects in these deed of trust

foreclosures." RP at 15.[3] The court also found that the land was not principally used for

---

[3] The court noted that the only procedural defect was that of the Masseys, who failed to give the trustee the five day statutory notice before restraining Boyd's May 26 foreclosure sale.

agricultural purposes and reserved ruling on the respondents' request for fees and costs.

The Masseys timely appealed.

## ANALYSIS

A.    NONJUDICIAL FORECLOSURE WAS APPROPRIATE

RCW 61.24.030(2) prohibits a nonjudicial foreclosure sale if the property is used principally for agricultural purposes. The Masseys argue that because the property was used principally for agricultural purposes, the trial court erred when it refused to restrain the nonjudicial foreclosure sales.

The application of the agricultural use provision of RCW 61.24.030(2) to the present case is a mixed question of fact and law that we review de novo. *In re Tr.'s Sale of Real Prop. of Burns*, 167 Wn. App. 265, 270, 272 P.3d 908 (2012) ("We review de novo questions of legal interpretation of the 'Deeds of Trust Act.'").

RCW 61.24.030 provides in relevant part:

It shall be requisite to a trustee's sale:
. . . .
(2)  That the deed of trust contains a statement that the real property conveyed is not used principally for agricultural purposes; provided, if the statement is false *on the date the deed of trust was granted or amended* to include that statement *and* false on *the date of the trustee's sale*, then the deed of trust must be foreclosed judicially. Real property is used for agricultural purposes if it is used in an operation that produces crops, livestock, or aquatic goods.

6

(Emphasis added.) Thus, judicial foreclosure is required if the property was used principally for agricultural purposes (1) when the deed of trust was granted or amended, *and* (2) on the date of the foreclosure sale.

The Masseys argue that the property was used principally for agricultural purposes because they and the foreclosing parties entered into a joint venture to operate a cannabis farm. The Masseys do not contend, however, that the property was being operated as a cannabis farm in July 2014, when they granted the deeds of trust to the foreclosing parties. For this reason, and because the deeds of trust had the required nonagricultural use statements, the foreclosing parties were entitled to foreclose nonjudicially. The trial court did not err in holding that the foreclosing parties could foreclose nonjudicially.

B.    WHETHER THE SALE WAS RESTRAINED OR CONTINUED

The Masseys argue that the trial court erred by characterizing its initial continuance as a restraining order. We do not address this argument. The trial court ultimately denied the Masseys' request based on substantive arguments, not this procedural one.[4]

C.    THE MASSEYS DID NOT WAIVE ANY PROTECTIONS UNDER THE DTA

---

[4] Based on the record before us, the trial court did not sanction the Masseys' attorney for obtaining the ex parte order. If it had, we would address the argument.

The Masseys argue that the deeds of trust falsely stated that the property was not primarily used for agricultural purposes. The Masseys argue that the trial court erred in giving these false statements effect and, in doing so, waived their protections under the DTA. Because the statements in the deeds of trust were truthful, the Masseys' underlying premise for this argument fails.

D.    MISCELLANEOUS UMBRAGES

The Masseys' last argument is difficult to decipher. In general, they explain their good faith bases for proceeding in the manner they did and take umbrage with the trial court's statement that their attempt to continue or restrain Boyd's May 26 trustee's sale was improper.

The Masseys conclude the last two pages of their argument with a statement that the trial court erred because they were not in default on any obligation owed to Boyd. We disagree.

The Boyd deed of trust requires the Masseys to protect the security of the deed of trust. Relating to this requirement, the Masseys agreed "[t]o pay before delinquent all lawful taxes and assessments upon the property; to keep the property free and clear of all other charges, liens, or *encumbrances impairing the security of this Deed of Trust*." CP at 76 (emphasis added).

8

On January 17, 2017, when Boyd gave notice of default to the Masseys, his deed

of trust was impaired. This is because Lockeman was beginning the foreclosure process,

and a foreclosure action by Lockeman would extinguish Boyd's junior deed of trust. *In

re Tr.'s Sale of Real Prop. of Upton*, 102 Wn. App. 220, 224, 6 P.3d 1231 (2000).

The Masseys finally argue that Boyd's foreclosure was prohibited because

paragraph 9 of the promissory note precluded accelerating the payment without first

providing 365 days' notice to cure. We disagree.

That provision provides:

> **ACCELERATION:** If Maker fails to make any payment owed under this
> Note, or if Maker defaults under any Deed of Trust or any other instruments
> securing repayment of this Note, and such default is not cured within 365
> days . . . after written notice of such default, then Holder may, at its option,
> declare all outstanding sums owed on this Note to be immediately due and
> payable, *in addition to any other rights or remedies that Holder may have
> under the Deed of Trust or other Instruments securing repayment of this
> Note.*

CP at 81 (emphasis added).

The remedy under the acceleration clause is not exclusive. The acceleration clause

does not prevent Boyd from declaring default under the deed of trust and pursuing a

statutory nonjudicial foreclosure remedy.

9

E.    ATTORNEY FEES

Respondents request an award of attorney fees and costs on appeal.  Without specifying the applicable paragraph, they assert that the deeds of trust provide for recovery of attorney fees and costs.  We find a paragraph in the deed of trust that provides:

> To protect the security of this Deed of Trust, Grantor(s) covenant(s) and agree(s):
>
> . . . .
>
> 5.  To pay all costs, fees, and expenses in connection with this Deed of Trust, including the expenses of the Trustee incurred in enforcing the obligation secured hereby and Trustee's and [sic] attorney's fees actually incurred, *as provided by statute*.

CP at 186-87, 205-06 (emphasis added).

The language is imprecise and should be revised.  We nevertheless believe the intent of the language, construed with RCW 4.84.330, encompasses an obligation that a nonprevailing party in an action to restrain a nonjudicial foreclosure sale must bear the fees, costs, and expenses of the prevailing party.  Reluctantly,[5] we grant respondents' request for attorney fees and costs.

---

[5] Lockeman broke her promise to provide additional financing.  But she will become the owner of the property, which contains substantial improvements beyond the money she lent.  Her recovery, including reimbursement for fees and costs, is inequitable in the opinion of this author.  Nonetheless, this court has no discretion to deny fees. *Singleton v. Frost*, 108 Wn.2d 723, 727-29, 742 P.2d 1224 (1987).

No. 35395-8-III
*Massey v. Neill*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Siddoway, J.

11